William Scott SOURS, Appellant,

v.

STATE of Missouri, Respondent.

No. 61458.

Supreme Court of Missouri,
En Banc.

Aug. 18, 1980.

David Robards, Public Defender, Joplin, for appellant.

John Ashcroft, Atty. Gen., Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, William Scott Sours, pleaded guilty to two counts of an information filed June 20, 1977. Count I charged appellant with first degree robbery, § 560.120, RSMo 1969, and § 560.135, RSMo Supp.1975; Count II charged armed criminal action, § 559.225, RSMo Supp.1976 (now § 571.015, RSMo 1978). A separate punishment was imposed for each count. Appellant sought relief from his convictions in a collateral proceeding under Rule 27.26. In *Sours v. State*, Mo., 593 S.W.2d 208 (1980), we reversed the judgment of the trial court insofar as it denied appellant relief from his conviction for armed criminal action, and vacated and set aside that conviction on the ground that the conviction placed appellant twice in jeopardy for the same offense. We affirmed the judgment insofar as it denied appellant relief from his conviction for robbery first degree. The United States Supreme Court vacated our decision and remanded the case for reconsideration in the light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *Missouri v. Sours*, —— U.S. ——, 100 S.Ct. 2935, 64 L.Ed.2d. 820. The detailed facts and prior procedural history of this case may be found in this Court's earlier opinion, 593 S.W.2d at 210.

The United States Supreme Court has never decided whether imposing separate punishments in a single proceeding both for the offense of committing a felony by means of a dangerous and deadly weapon and for the commission of the felony violates the double jeopardy clause of the federal Constitution. The Court expressly declined to rule on this issue in *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). *Cf. Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Each time a similar double jeopardy question has been before the United States Supreme Court, it has found it unnecessary. to address the constitutional question, because it has been able to find that the legislature did not intend to separately punish the two offenses involved. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 1435 (1980); *Simpson v. United States*, 435 U.S. 6, 11, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978); *Iannelli v. United States*, 420 U.S. 770, 785–86 nn. 17–18, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). *See Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). No United States Supreme Court opinion has considered a statute that contained wording similar to or identical to that found in Missouri's armed criminal. action statute.

In *Whalen*, the defendant was convicted of rape, D.C.Code Ann. § 22–2801, and of felony–murder, *i. e.*, the killing of the rape victim in the course of the rape, D.C.Code

Ann. § 22–2401. He was sentenced to consecutive terms of imprisonment of 20 years to life for first degree murder, and of 15 years to life for rape. The District of Columbia Court of Appeals affirmed, 379 A.2d 1152. The United States Supreme Court reversed, holding that under D.C.Code Ann. § 23–112,[1] Congress did not intend that multiple punishments be imposed for two offenses arising out of the same criminal transaction unless each offense requires proof of a fact which the other does not. The Court stated that

> Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that "each provision requires proof of a fact which the other does not." A conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape. See *United States v. Greene*, 160 U.S.App.D.C. 21, 489 F.2d 1145, 1158 (1973). Cf. *Harris v. Oklahoma*, 433 U.S. 682, 682–683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 [1977].

445 U.S. at 693, 100 S.Ct. at 1439. The Court expressly reserved the question whether, had Congress clearly intended to impose multiple punishments for the same offense, the imposition of such punishment would violate the double jeopardy clause. Before holding that the Court would decide the question of statutory interpretation without deferring to the interpretation of the District of Columbia Court of Appeals, the Court carefully distinguished the question of statutory interpretation from the constitutional question. The Court stated that, if the matter of whether it must defer to the construction given D.C.Code Ann. §§ 22–2801 and 22–2401 by the District of Columbia Court of Appeals were absent, "we would as a matter of course first decide the petitioner's statutory claim, and, only if that claim were rejected, would we reach the constitutional issue. See *Simpson v. United States*, 435 U.S. 6, 11–12, 98 S.Ct. 909, 912, 55 L.Ed.2d 70." 445 U.S. at 687, 100 S.Ct. at 1435. Accordingly, since the Court did not reject the petitioner's statutory claim, it did not reach the constitutional issue presented.[2]

Mr. Justice Blackmun, concurring in the judgment in *Whalen* (Mr. Justice White filed an opinion concurring in part and concurring in the judgment and Mr. Justice Rehnquist filed a dissenting opinion in which Mr. Chief Justice Burger joined) stated that prior cases had wrongly suggested:

---

1. D.C.Code Ann. § 23–112 provides:
   > A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

   The Court stated that, although the phrasing of this statute was "less than felicitous," it would be construed to mean "that multiple punishments cannot be imposed for two offenses arising out of the same criminal transaction unless each offense 'requires proof of a fact which the other does not.'" 445 U.S. at 691, 100 S.Ct. at 1438.

2. The Court stated:
   > Because we have concluded that the District of Columbia Court of Appeals was mistaken in believing that Congress authorized consecutive sentences in the circumstances of this case, and because that error denied the petitioner his constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress, we reverse the judgment of the Court of Appeals.

   445 U.S. at 690, 100 S.Ct. at 1437.

   Mr. Justice Rehnquist, in his dissent in *Busic v. United States*, -- U.S. ·, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), considered the decision in *Whalen* to have decided the very issue which it expressly reserved. He stated: "In *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 55 L.Ed.2d 70 (1980), six Members of this Court held that Congress' intent to impose cumulative punishments at a single criminal proceeding completely controlled the question of double jeopardy." -- U.S. at ··-, 100 S.Ct. at 1759. The Court in *Whalen* in fact held that the case involved a congressional intent *not to impose* cumulative punishments at a single criminal proceeding. 445 U.S. at 693, 100 S.Ct. at 1439. Perhaps it is noteworthy that eight members of the Court did not join in Mr. Justice Rehnquist's reading of the holding of *Whalen*.

that the Double Jeopardy Clause may prevent the imposition of cumulative punishments in situations in which the Legislative Branch *clearly intended* that multiple penalties be imposed for a single criminal transaction. See *Simpson v. United States*, 435 U.S. 6, 11–13, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978); *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977) (plurality opinion). I believe that the Court should take the opportunity presented by this case to repudiate those dicta squarely, and to hold clearly that the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. I must concede that the dicta that seemingly support a contrary view have caused confusion among state courts that have attempted to decipher our pronouncements concerning the Double Jeopardy Clause's role in the area of multiple punishments.

445 U.S. at 697, 100 S.Ct. at 1441. Clearly, the five justices who joined in the opinion of the Court in *Whalen* (Justices Stewart, Powell, Stevens, Brennan, and Marshall) declined Justice Blackmun's invitation to hold that the question of what punishments are constitutionally permissible can be reduced to the question of what punishment the legislature intended to be imposed. The two questions remain distinct.[3] The opinion of the Court in *Whalen* cited *Simpson* with approval for its separation of the statutory claim from the constitutional issue and for its avoidance of the constitutional issue by finding that the legislature did not intend multiple punishments. 445 U.S. at 686, 100 S.Ct. at 1435.

Our original opinion discussed in detail two recent United States Supreme Court cases in which the question whether the legislature intended to subject the defendant to multiple penalties for a single criminal transaction was carefully distinguished from the question whether cumulative punishments for the two offenses are constitutionally permissible. *Simpson v. United States*, 435 U.S. 6, 11, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978); *Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (plurality opinion). *See Sours v. State*, 593 S.W.2d 208, 214–16 (Mo.1980).

The decision of the United States Supreme Court to vacate the original judgment of this Court and to remand this case "for further consideration in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)," mandates that we reexamine the intent of the General Assembly in enacting § 559.225, RSMo Supp.1976. In *Whalen*, the Court determined that Congress did not intend to punish the petitioner both for committing rape and for committing a killing in the course of the rape. In reaching this conclusion, the Court applied to D.C.Code Ann. § 23–112 the doctrine of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) as "a rule of statutory construction." 445 U.S. at 691, 100 S.Ct. at 1438. In *Blockburger*, the Court held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. The *Blockburger* rule has often been cited by the Court. At times it has been present-

---

**3.** Our refusal to collapse the constitutional question into the question of legislative intent does not commit us to the assumption, criticized by Mr. Justice Rehnquist, "that any particular criminal transaction is made up of a determinable number of constitutional atoms that the legislature cannot further subdivide into separate offenses." *See Whalen*, 445 U.S. at 701, 100 S.Ct. at 1443 (Mr. Justice Rehnquist, dissenting). On the contrary, we recognize that the legislature may divide the criminal transaction into its subatomic particles, into protons and neutrons and electrons, into particles of different electrical charges and weights and spins. We hold only that, once the definition of a crime is fixed as a configuration of such elements, the state may not, consistently with the due process clause and the double jeopardy clause, impose separate punishments both for the neutron and for the atom of which it is a part.

ed as a rule of statutory construction, but more often it has been used as the defini-

tion of "same offense" for double jeopardy purposes.[4]   *Whalen v. United States*, 445

4. In numerous decisions of the United States Supreme Court from 1902 to 1959, the same evidence test was uniformly treated as the definition of sameness of offense for double jeopardy purposes. The same evidence test was used more frequently in the single prosecution multiple punishment context than it was in the multiple prosecution context. *Harris v. United States*, 359 U.S. 19, 23–24, 79 S.Ct. 560, 564, 3 L.Ed.2d 597 (1959) (single proceeding; convictions and punishments for purchasing heroin from an unstamped package, a violation of 26 U.S.C. § 4704(a), and for receiving and concealing the same knowing it to have been unlawfully imported, a violation of 21 U.S.C. § 174, affirmed; offenses held distinct under same evidence test); *Gore v. United States*, 357 U.S. 386, 388 91, 78 S.Ct. 1280, 1282–1283, 2 L.Ed.2d 1405 (1958) (single proceeding; convictions and punishments for sale and distribution of heroin and cocaine not in the original stamped package, a violation of 26 U.S.C. § 4704(a), for sale of the drugs not pursuant to an order written on the requisite Treasury form, a violation of 26 U.S.C. § 4705(a), and for facilitating concealment and sale of the drugs, a violation of 21 U.S.C. § 174, affirmed; offenses held distinct under same evidence test); *Pereira v. United States*, 347 U.S. 1, 9, 11 · 12, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954) (single proceeding; convictions and punishments for mail fraud a violation of 18 U.S.C. § 1341, for transporting stolen property in interstate commerce, a violation of 18 U.S.C. § 2314, and for conspiracy to commit both offenses, a violation of 18 U.S.C. § 371 affirmed; offenses held distinct under same evidence test); *United States v. Michener*, 331 U.S. 789, 67 S.Ct. 1509, 91 L.Ed. 1818 (1947) (per curiam) (single proceeding; convictions and punishments for procuring a plate from which genuine $10 Federal Reserve Notes had been printed, and of having possession of such a plate, violations of 18 U.S.C. § 264; offenses held distinct under same evidence test; reversing 157 F.2d 616 (8th Cir. 1946)); *American Tobacco Co. v. United States*, 328 U.S. 781, 787 89, 66 S.Ct. 1125, 1128 1129, 90 L.Ed. 1575 (1946) (single proceeding; convictions and punishments for conspiracy in restraint of trade, monopolization, and conspiracy to monopolize under Anti Trust Sherman Act; offenses held distinct under same evidence test); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 552, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943) (single proceeding; convictions for 56 instances of defrauding the United States through collusive bidding on P.W.A. projects, violations of 18 U.S.C. §§ 80, 83, and separate forfeitures of $2,000 per instance plus double damages affirmed; the incidence of fraud on each project held distinct offense under same evidence test); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct.

180, 182, 76 L.Ed. 306 (1932) (single proceeding; convictions and punishments for sale of morphine not in or from the original stamped package and for sale not pursuant to a written order on the requisite Treasury form affirmed; offenses held distinct under same evidence test); *King v. United States*, 280 U.S. 521, 50 S.Ct. 65, 74 L.Ed. 590 (1929) (per curiam) (two proceedings; plea of former jeopardy rejected where sentence for selling morphine not in or from the original stamped package was imposed in one proceeding and executed before second indictment charging interstate shipment of drugs by a person who has not registered and paid the special tax required was brought; offenses held distinct under same evidence test; affirming 31 F.2d 17 (9th Cir. 1929)); *Albrecht v. United States*, 273 U.S. 1, 11–12, 47 S.Ct. 250, 253 ·254, 71 L.Ed. 505 (1927) (single proceeding; convictions and punishments for four counts of illegal possession of liquor and four counts of illegal sale of liquor in violation of the National Prohibition Act and one count of maintaining a common nuisance affirmed; sale and possession held distinct under same evidence test); *Morgan v. Devine*, 237 U.S. 632, 638 39, 641, 35 S.Ct. 712, 713–14, 59 L.Ed. 1153 (1915) (single proceeding; convictions and sentences on guilty pleas to charges of unlawful forcible breaking into a post office building with intent to commit larceny, a violation of § 192 of the Penal Code, and of stealing postage stamps and funds belonging to the United States, a violation of § 190 of the Penal Code, affirmed; offenses held distinct under the same evidence test; using same evidence test for two purposes both to determine the legislative intent and separately to respond to the double jeopardy claim); *Ebeling v. Morgan*, 237 U.S. 625, 630· 31, 35 S.Ct. 710, 711–12, 59 L.Ed. 1151 (1915) (single proceeding; convictions and punishments for six counts of tearing, cutting, and injuring United States mailbags, in violation of § 189 of the Federal Criminal Code, affirmed; offenses held distinct under the same evidence test); *Gavieres v. United States*, 229 U.S. 338, 343 44, 31 S.Ct. 421, 422· 23, 55 L.Ed. 489 (1911) (two proceedings; conviction and punishment for insulting a public officer by deed or word in his presence, a violation of article 257 of the Penal Code of the Philippine Islands, after previous conviction because of the same words and conduct of behaving in an indecent manner in a public place, a violation of an ordinance of the city of Manila; offenses held distinct under the same evidence test); *Carter v. McClaughry*, 183 U.S. 365, 394–95, 398, 22 S.Ct. 181, 192–193, 194, 46 L.Ed. 236 (1902) (single court martial proceeding; conviction and punishment for conspiring to defraud the United States, a violation of the 60th article of war, for causing false and fraudulent

U.S. at 692, 100 S.Ct. at 1438 (1980); *Simpson v. United States*, 435 U.S. 6, 11, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977) (plurality opinion) (see opinion of White, J., concurring in part and dissenting in part, at 158, 97 S.Ct. at 2220); *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

In *Whalen*, the Court stated that the *Blockburger* rule had been consistently relied on ever since it was first stated in 1932:

to determine whether Congress has in a given situation provided that two statuto-

ry offenses may be punished cumulatively. The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent.*

455 U.S. at 691, 100 S.Ct. at 1438. (Emphasis added.)

## I. LEGISLATIVE INTENT

■ Applying *Blockburger* as a rule of statutory construction to the armed criminal action statute [5] and the statute defining

---

claims to be made against the United States, a violation of the 60th article of war, for conduct unbecoming an officer and a gentleman, a violation of the 61st article of war, and for committing embezzlement, a violation of § 5488 of the Revised Statutes of the United States and of the 62d article of war, held to be within the jurisdiction of the court martial; offenses held distinct under the same evidence test); *In re Nielsen*, 131 U.S. 176, 188, 190 91, 9 S.Ct. 672, 676 77, 33 L.Ed. 118 (1889) (two indictments; conviction and punishment on a guilty plea to bigamy, *i. e.* living with more than one woman as husband and wife continuously from October 15, 1885, to May 13, 1888; second indictment charged adultery with one of the two women occurring on May 14, 1888; convicted for unlawful cohabitation held to bar a subsequent prosecution for adultery under the same evidence test, since the continuous bigamy offense necessarily implied sexual intercourse, so that proof of adultery did not require proof of a fact not also required to show bigamy).

The claim that the meaning of the phrase "same offense" in the multiple punishment context is in fact different from the meaning of the phrase "same offense" in the multiple prosecution context requires justification. We can find nothing in the legislative intent to impose two punishments, one for the greater offense and one for the lesser included offense, which would justify refusing to classify the two crimes as the "same offense" under the double jeopardy clause. If a state legislature could manipulate the meaning of the phrase "same offense" as it is used in the fifth amendment to the Constitution, there would be no reason to suppose that the Constitution prevents a legislature from authorizing, by a clear expression of intent, the sequential prosecution and punishment of the greater and lesser included offense.

5. Section 559.225, RSMo Supp.1976, defined the crime of armed criminal action and fixed the punishment for that crime as follows:

559.225. Armed Criminal Action penalty exceptions. 1. Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release ·or suspended imposition or execution of sentence for a period of three calendar years.

2. Any person convicted of a second offense of armed criminal action shall be punished by imprisonment by the division of corrections for a term of not less than five years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committee [sic] by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of five calendar years.

3. Any person convicted of a third or subsequent offense of armed criminal action shall be punished by imprisonment by the division of corrections for a term of not less than ten years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for

the underlying offense, in this case the robbery first degree statute,[6] we find that it is plainly not the case that "each provision requires proof of a fact which the other does not." A conviction for committing robbery first degree "by, with, or through the use, assistance, or aid of a dangerous or deadly weapon," § 559.225, RSMo Supp. 1976, cannot be had without proving all the elements of the offense of robbery first degree. *See Illinois v. Vitale,* ―― U.S. ――, ――, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Whalen,* 445 U.S. at 694, 100 S.Ct. at 1439; *Harris v. Oklahoma,* 433 U.S. 682, 682–83, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977); *United States v. Greene,* 160 U.S. App.D.C. 21, 489 F.2d 1145, 1158 (1973). Thus, the General Assembly should be presumed not to have intended that punishment be imposed under both statutes. 445 U.S. 691, 100 S.Ct. at 1438. Nevertheless, we find that the General Assembly has in clear and unequivocal terms expressed in § 559.225, RSMo Supp.1976, its intent to authorize conviction and punishment for armed criminal action and for the underlying felony. In arriving at this conclusion, we apply every test and standard available to us under Missouri law. First, we consider the plain meaning of the language used. We consider the requirements of our own constitution regarding construction of the statute. We examine every reported decision involving convictions under the armed criminal action statute, in order to discern the application given the statute by Missouri's courts and prosecutors in prior cases. We examine the form of the information or indictment used to charge armed criminal action, both before and after a standard form for charging armed criminal action was approved; and we examine the form of the jury instructions used in submitting a charge of armed criminal action, both before and after a patterned instruction for submitting armed criminal action was approved.

The language of the armed criminal action statute shows that the General Assembly clearly intended that a defendant convicted of armed criminal action shall be punished for both armed criminal action and for the underlying felony. Section 559.225, RSMo Supp.1976 (now § 571.015, RSMo 1978) expressly provides that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous or deadly weapon *is also guilty of the crime of armed criminal action.*" (Emphasis added.) The armed criminal action statute provides in three separate subsections for punishment of not less than three years' imprisonment for the first offense, not less than five

the crime committed, by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of ten calendar years.

4. The provisions of this section shall not apply to the felonies defined in sections 559.-005, 564.590, 564.610, 564.620, 564.630, and 564.640, RSMo.

6. The underlying felony in this case was robbery first degree, as it was defined in § 560.120, RSMo 1969, and the punishment for which was prescribed in § 560.135, RSMo Supp.1975. Section 560.120, RSMo 1969, provided:

Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person; or who shall be convicted of feloniously taking the property of another from the person of his wife, servant, clerk or agent, in charge thereof, and against the will of such wife, servant, clerk or agent, by violence to the person of such wife, servant, clerk or agent, or by putting him or her in fear of some immediate injury to his or her person, shall be adjudged guilty of robbery in the first degree.

Section 560.135, RSMo Supp.1975, provided:

Every person convicted of robbery in the first degree by means of a dangerous and deadly weapon and every person convicted of robbery in the first degree by any other means shall be punished by imprisonment by the division of corrections for not less than five years; every person convicted of robbery in the second degree shall be punished by imprisonment by the division of corrections not exceeding five nor less than three years; every person convicted of robbery in the third degree shall be punished by imprisonment by the division of corrections not exceeding five years.

years' imprisonment for the second offense, and not less than ten years' imprisonment for the third. The legislative intent to impose punishment both for the underlying felony and for the "compound" offense of which it is a part is clearly and unambiguously expressed in the following sentence, which appears in each of the three subsections: "The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous [instrument] or deadly weapon." There is nothing ambiguous or uncertain about the meaning of this provision. The statute provides that the state may punish for any felony and also punish for that felony a second time in virtue of its having been committed through the use of a dangerous or deadly weapon. This is the plain meaning of the words used, and it is the unmistakable intent of our General Assembly. Clearly, § 559.225, RSMo Supp.1976, provides for more than the mere enhancement of the sentence for the underlying felony. It calls for conviction of a second crime and for the imposition of a second sentence. Consequently, we cannot avoid the question whether the double jeopardy clause prohibits the imposition in a single proceeding of multiple punishments for the same offense.

What was said in *City of St. Louis v. Crowe*, 376 S.W.2d 185 (Mo.1964) is fully applicable to our armed criminal action statute:

This section of the statutes now under scrutiny is clear and unambiguous in its language. It is not susceptible of more than one construction. Therefore, we may not resort to any extraneous matter because there is no room for construction of such language. *State ex rel. Bell v. Phillips Petroleum Co.*, 349 Mo. 360, 160 S.W.2d 764; *Rathjen v. Reorganized School Dist. R–II of Shelby County*, 365 Mo. 518, 284 S.W.2d 516. We have no right to read into the statute an intent

which is contrary to the legislative intent made evident by the phraseology employed. *State ex inf. Rice ex rel. Allman v. Hawk*, 360 Mo. 490, 228 S.W.2d 785; *Steggall v. Morris*, 363 Mo. 1224, 258 S.W.2d 577. The legislative pronouncement means what it says . . . . .

376 S.W.2d at 189–90. *See State ex rel. Stevenson v. Kirkpatrick*, 536 S.W.2d 740, 741 (Mo. banc 1976); *State ex rel. Dravo Corp. v. Spradling*, 515 S.W.2d 512, 517 (Mo. 1974); *Missourians for Honest Elections v. Missouri Elections Commission*, 536 S.W.2d 766, 775 (Mo.App.1976); *Consolidated School District No. 1 of Jackson County v. Bond*, 500 S.W.2d 18, 21 (Mo.App.1973). *See also* J. Sutherland, 2A Statutes and Statutory Construction § 46.01, pp. 48–49 (C. Sands 4th ed. 1973).

■ We note that we are not free to construe the armed criminal action statute as a mere punishment–enhancement statute which amends by implication numerous felony statutes, because Mo.Const. art. III, § 28 prohibits the General Assembly from amending statutes without setting forth in full the statutes so amended. *Sours v. State*, 593 S.W.2d 208, 222 n. 10 (Mo. banc 1980); *State v. Valentine*, 584 S.W.2d 92, 96 (Mo. banc 1979). *Cf. State v. Hudson*, 562 S.W.2d 416 (Tenn.1978).

The uniformity of the interpretation and application of § 559.225, RSMo Supp.1976 (§ 571.015, RSMo 1978), confirms that it plainly authorizes punishment both for armed criminal action and for the underlying felony. Following the original *Sours* opinion our prosecutors and penal authorities indicated informally to this Court that they believed that as many as four hundred to six hundred prior convictions might be affected by the opinion. In the four years since the enactment of the statute, the appellate courts of this state have been called upon literally dozens of times to review convictions for both armed criminal action and the underlying felony.[7] In none of these cases was it ever questioned that the

---

7. *State v. Valentine*, 584 S.W.2d 92 (Mo. banc 1979) (per Rendlen, J.) (affirming unspecified sentences for both armed criminal action and robbery first degree); *State v. Treadway*, 558

S.W.2d 646 (Mo. banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978) (per Donnelly, J.) (three year sentence for armed criminal action and fifteen years for robbery

legislature intended to say exactly what it said in the armed criminal action statute. No case has been discovered where the armed criminal action statute has not been understood by our trial and appellate judges and by our prosecutors, assistant attorneys general, and Attorney General to mean that punishment may be imposed once for a felony and a second time ("in addition to") for the same felony if it was committed by the use, aid, or assistance of a dangerous or deadly weapon. No amount of analysis premised on presumptions concerning legislative intent can obscure the fact that § 559.225, RSMo Supp.1976, provides that a person guilty of armed criminal action shall be punished for both of two crimes, one of which by definition includes every element of the other.

■ This construction of our state statute is binding on the United States Su-

first degree, to run consecutively); *State v. Merritt*, 591 S.W.2d 107 (Mo.App.1979) (per Manford, J.) (five years for armed criminal action to run concurrently with consecutive sentences of twenty years for robbery first degree and five years for assault with intent to kill with malice); *State v. Irvin*, 590 S.W.2d 699 (Mo.App.1979) (per Clemens, Sr. J.) (five years for armed criminal action to run consecutively to twenty years for robbery); *Riley v. State*, 588 S.W.2d 738 (Mo.App.1979) (per Kelly, J.) (three years for armed criminal action to run consecutively to concurrent sentences of seventeen years each for two counts of robbery first degree and one count of assault with intent to kill. *State v. Pollard*, 588 S.W.2d 212 (Mo.App. 1979) (per Swofford, J.) (five years for armed criminal action to run concurrently with five years for sodomy and to run consecutively to twenty-five years with rape. *State v. Medley*, 588 S.W.2d 55 (Mo.App.1979) (per Pudlowski, J.) (three years for armed criminal action and twenty years for robbery first degree); *State v. Mays*, 588 S.W.2d 6 (Mo.App.1979) (per Reinhard, P. J.) (five years for armed criminal action to run consecutively to fifteen years for robbery first degree); *State v. Tyler*, 587 S.W.2d 918 (Mo.App.1979) (per Kennedy, J.) (twenty five years for armed criminal action to run consecutively to seventy-five years for robbery first degree, seventy-five years for rape, and ten years for kidnapping); *State v. Williams*, 587 S.W.2d 618 (Mo.App.1979) (per Crist, J.) (five years for armed criminal action to run concurrently with twenty years for robbery first degree); *State v. Gant*, 586 S.W.2d 755 (Mo.App.1979) (per Somerville, P. J.) (reversing conviction for armed criminal action where armed criminal action in conjunction with assault was charged but armed criminal action in conjunction with murder was submitted in jury instructions); *State v. Crews*, 585 S.W.2d 131 (Mo.App.1979) (per Gunn, J.) (sentences unspecified; underlying felony unspecified; convictions for armed criminal action, first degree robbery, and three counts of assault with intent to kill with malice); *State v. Brown*, 584 S.W.2d 413 (Mo.App.1979) (per Reinhard, P. J.) (thirty years for one count of armed criminal action to run concurrently with ten years each for two counts of robbery first degree); *State v. Jones*, 583 S.W.2d 561 (Mo. App.1979) (per Clemens, J.) (three years for armed criminal action to run consecutively to robbery first degree) (reversed and remanded for error in admission of hearsay); *State v. Burse*, 583 S.W.2d 221 (Mo.App.1979) (per Crist, J.) (thirty-five years for armed criminal action to run concurrently with eight years for attempted robbery first degree); *State v. Davidson*, 583 S.W.2d 208 (Mo.App.1979) (per Higgins, Sp. J.) (unspecified sentences for one count of armed criminal action and two counts of robbery first degree); *State v. Hutchinson*, 582 S.W.2d 350 (Mo.App.1979) (per Crist, J.) (twenty-five years for one count of armed criminal action to run concurrently with concurrent sentences of twenty-five years each for eight counts of robbery first degree); *State v. Hawkins*, 582 S.W.2d 333 (Mo.App.1979) (per Pritchard, J.) (underlying felony unspecified; three years for armed criminal action to run consecutively to ten years for robbery first degree and fifteen years for assault with intent to do great bodily harm with malice) (reversed for defect in jury panel); *State v. Burns*, 581 S.W.2d 590 (Mo.App.1979) (per Reinhard, P. J.) three years for armed criminal action to run consecutively to fifteen years for robbery first degree); *State v. Bargeon*, 578 S.W.2d 364 (Mo. App.1979) (per Gunn, J.) (twenty-five years for armed criminal action to run consecutively to seventy-five years for rape); *State v. Jones*, 578 S.W.2d 286 (Mo.App.1979) (per Reinhard, P. J.) (underlying felony unspecified; five years for armed criminal action to run consecutively to consecutive sentences of ten years for forcible rape and five years for robbery first degree); *State v. Carter*, 577 S.W.2d 109 (Mo. App.1978) (per Welborn, Sp. J.) (five years for armed criminal action to run concurrently with ten years for robbery first degree); *State v. Woods*, 578 S.W.2d 942 (Mo.App.1978) (per Clemens, J.) (three years for armed criminal action to run consecutively to twenty years for robbery first degree); *State v. Tilley*, 569 S.W.2d 346 (Mo.App.1978) (per Reinhard, J.) (fifteen years for armed criminal action to run consecutively to ten years for attempted robbery in the first degree); *Simms v. State*, 568 S.W.2d 801 (Mo.App.1978) (per McMillian, J.) (three years for armed criminal action to run consecutively to twelve years for robbery first degree).

preme Court. In *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1973), the United States Supreme Court stated: "[I]t is not our function to construe a state statute contrary to the construction given it by the highest court of a State." *Id.* at 256, 94 S.Ct. at 1081; *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 743, 38 L.Ed.2d 702 (1973).

In the reported decisions involving convictions for both armed criminal action and the underlying felony, the armed criminal action charge was entered in a separate count from that charging the underlying felony. The two–count information in the instant case is typical. Count I alleged:

> that on or about the 14th day of May, 1977, in the County of Jasper and State of Missouri, WILLIAM S. SOURS did wilfully, unlawfully and feloniously by means of a certain dangerous and deadly weapon, to–wit: a handgun, take, stea[l] and carry away Nine Hundred Forty-nine and 06/100 ($949.06) Dollars, lawful money of the United States of. America, the money and personal property of Mr. Quick, then and there in the lawful care and custody of Kendall Carnes, by then and there putting the said Kendall Carnes in fear of an immediate injury to his person and then and there did feloniously rob, take, steal and carry away the said money and personal property from the person of, in the presence of and against the will of the said Kendall Carnes with the felonious intent to permanently deprive the owner of the use thereof and to convert the same to his own use.

Count II alleged:

> that on or about the 14th day of May, 1977, in the County of Jasper and State of Missouri, WILLIAM S. SOURS did wilfully, unlawfully and feloniously commit a felony, to–wit: Robbery First Degree, by and with the use, aid and assistance of a dangerous or deadly weapon to–wit: a handgun.

*See Jeffers v. United States*, 432 U.S. 137, 150 n. 16, 97 S.Ct. 2207, 2216 n. 16, 53 L.Ed.2d 168 (1977).

This Court recently approved a patterned charge for use in charging armed criminal action, MACH–Cr 25.02, the patterned charge is as follows:

> The (Grand Jurors) (Circuit Attorney) (Prosecuting Attorney) of the (City) (County) of _____, State of Missouri, charge(s) that the defendant, in violation of Section 571.015, RSMo, committed the class A felony of armed criminal action, punishable upon conviction under Section (571.015.1) (571.015.2) (571.015.3), RSMo, in that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant [*insert one of the following, omitting number and brackets*]
>
> [*1*] committed the felony of [*name of felony*] charged in Count ___, all allegations of which are incorporated herein by reference, and
>
> [*2*] committed the felony of [*name of felony, alleging all essential elements thereof with the same specificity as that used in a charge of that felony*], and
>
> The defendant committed the foregoing felony of [*name of felony*] by, with and through the use, assistance and aid of a (dangerous instrument) (deadly weapon) (, and)
>
> ((On) (On or about) [*date*] in [*identify the particular court and jurisdiction*], the defendant was convicted of the offense of armed criminal action (, and))
>
> ((On) (On or about) [*date*] in [*identify the particular court and jurisdiction*], the defendant was convicted of the offense of armed criminal action)).

Both pre–patterned and patterned charges indicate that our statute has been universally interpreted to permit the charging of armed criminal action and the underlying felony in separate counts.

Similarly, the instructions commonly used to submit to the jury the question of the guilt or innocence of the accused of armed criminal action and of the underlying felony illustrate that the statute has uniformly been interpreted to authorize separate conviction and punishment for both armed criminal action and the underlying felony,

as does our recently adopted pattern jury instruction, MAI–Cr 25.02. The verdict–directing instructions used in *State v. Treadway*, 558 S.W.2d 92 (Mo. banc 1979) are typical:

### INSTRUCTION NO. 7

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on September 25, 1976, in the City of St. Louis, State of Missouri, Rotha Grimes was in charge of a purse owned by Jerry Hanks, and

Second, that at that time and place the defendant, acting with another, took the property from Rotha Grimes against her will by causing her to fear immediate injury to her person, and

Third, that the defendant, acting with another, took the property with the intent to permanently deprive Rotha Grimes and Jerri Hanks of the property and to convert it or any part of it to the use of the defendant and another, and

Fourth, that the defendant acted either alone or knowingly and with common purpose together with another in the conduct referred to in the above paragraphs,

then you will find the defendant guilty under Count I of robbery in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

MAI–CR 7.60 modified by 2.12
Submitted by the State
Given by the Court

### INSTRUCTION NO. 8

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that the defendant, acting with another, committed the crime of robbery in the first degree, a felony, as defined heretofore in Instruction No. 7, and

Second, that the perpetration of the aforesaid felony was done through the aid or use of a weapon, to–wit: a gun, held by either the defendant or his accomplice, and

Third, that the defendant acted either alone or knowingly and with common purpose together with another in the conduct referred to in the above paragraphs,

then you will find the defendant guilty under Count II of armed criminal action.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, then you must find the defendant not guilty under Count II of that offense.

Not in MAI–CR
Modified by 2.12
Submitted by the State
Given by the Court

### INSTRUCTION NO. 9

The defendant is charged with a separate offense in each Count submitted to you. Each offense and the evidence and law applicable to it should be considered separately. Any evidence which was or has been limited to one of the offenses charged or one purpose should be considered by you as to another offense charged or for any other purpose.

You may find the defendant guilty or not guilty on any or all of the Counts submitted against him.

MAI–CR–2.70
Given by the Court

Our pattern jury instructions for use in submitting armed criminal action, MAI–Cr2d 25.02, were promulgated effective January 1, 1979. The verdict–directing instruction which was provided for use in cases involving a first offender under the armed criminal action statute, and "where the underlying felony is charged in a separate count," is as follows:

(As to Count ____, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that the defendant is guilty under Count __ of ([*name of the offense, if it is a felony under all circumstances*]) ([*name of the offense, and if it is a misdemeanor under some circumstances and a felony under other circumstances, include the circumstances making it a felony*]), and

Second, that the defendant committed that offense by, with or through the use, assistance or aid of a (dangerous instrument) (deadly weapon),

then you will find the defendant guilty (under Count __) of armed criminal action.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty (under Count __) of armed criminal action, you will assess and declare his punishment at imprisonment by the division of corrections for a term fixed by you, but not less than three years or more than life imprisonment.

We have measured the legislature's intent regarding § 559.225, RSMo Supp.1976 (now § 571.015, RSMo 1978) by every test and standard available to us under the law of Missouri. The conclusion is inescapable that the Missouri General Assembly did intend to impose punishment for armed criminal action "in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous [instrument] or deadly weapon." The General Assembly did clearly intend to impose two separate punishments for armed criminal action and the lesser included offense.

At this point, the mandate that we reconsider in light of *Whalen* offers little help or guidance. In *Whalen* it was determined

that Congress had not intended cumulative punishments. The constitutional question could be and was reserved by the Court. In other cases in which the legislative intent was less clear than it is in the case of our armed criminal action statute, the constitutional question also has been reserved. *Simpson v. United States*, 435 U.S. 6, 11 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978); *Iannelli v. United States*, 420 U.S. 770, 785–86 nn. 17–18, 95 S.Ct. 1284, 1293–1294 nn. 17–18, 43 L.Ed.2d 616 (1975). *See Jeffers v. United States*, 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 187 (1977). The unique wording of the Missouri statute and the clear, positive and unequivocal intent to doubly punish, does not leave us a similar option. The unique wording of the armed criminal action statute dictates that we must bite the bullet and meet the federal constitutional issue.[8]

## II. DOUBLE JEOPARDY AND MULTIPLE PUNISHMENT FOR THE SAME OFFENSE

There is little we can add to the analysis given the constitutional question in *Sours v. State*, 593 S.W.2d 208, 211–14, 218–21 (Mo. banc 1980), and we would incorporate that analysis by reference into our opinion today, and reinstate the opinion originally published. The argument can be reduced to a simple syllogism:

(i) The double jeopardy clause of the fifth amendment to the United States Constitution prohibits the state from punishing a person twice for the same offense. *Benton v. Maryland*, 395 U.S. 784, 793–96, 89 S.Ct. 2056, 2061–63, 23 L.Ed.2d 707 (1969); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *State v. Neal*, 514 S.W.2d 544, 548 (Mo. banc 1974); *State v. Parsons*, 513 S.W.2d 430, 437–38 (Mo.1974).

---

**8.** Firm as our conviction may be that neither a citizen of Missouri nor a citizen of the United States should be twice punished for the same offense, to so hold under the Missouri Constitution would require reinterpretation of our own double jeopardy clause, Mo.Const. art. I, § 19, which has been construed to apply "only where

there has been an acquittal of the defendant by a jury." *Murray v. State*, 475 S.W.2d 67, 70 (Mo.1972); *Kansas City v. Henderson*, 468 S.W.2d 48, 52 (Mo.1971), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 570, 30 L.Ed.2d 557 (1971). *See Sours v. State*, 593 S.W.2d 208, 210 (Mo. banc 1980).

(ii) Armed criminal action and the underlying felony used to prove armed criminal action—in this case, robbery first degree—are the same offense for double jeopardy purposes under the same evidence test, because it is not the case that proof of robbery requires proof of any fact not also required to prove armed criminal action. *Vitale v. United States*, —— U.S. ——, 100 S.Ct. 2260. 65 L.Ed.2d 228 (1980); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980); *Simpson v. United States*, 435 U.S. 6, 11, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977); *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293–1294 n. 17, 43 L.Ed.2d 616 (1975); *Harris v. United States*, 359 U.S. 19, 23–24, 79 S.Ct. 560, 564, 3 L.Ed.2d 597 (1959); *Gore v. United States*, 357 U.S. 386, 388–91, 78 S.Ct. 1280, 1282–1283, 2 L.Ed.2d 564 (1958); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Carter v. McClaughry*, 183 U.S. 365, 394–95, 398, 22 S.Ct. 181, 46 L.Ed. 236 (1902); *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871).

(iii) Therefore, the double jeopardy clause prohibits separately punishing a person both for armed criminal action and for the underlying felony.

We continue to find this argument persuasive.

We may note that *Whalen*'s application of the *Blockburger* doctrine as a rule of statutory construction paralleled the application given *Blockburger* in our effort to resolve the constitutional issue in *Sours*. Compare *Whalen*, 445 U.S. at 693, 100 S.Ct. at 1439, with *Sours*, 593 S.W.2d at 219. In *Sours*, we stated that if the underlying felony used to prove armed criminal action were a single named felony instead of a class of offenses, "it would be obvious that

armed criminal action includes all of the elements of the felony specified." We observed that "the result is no different where the statute refers to 'any felony.'" 593 S.W.2d at 219. In *Whalen*, the Court concluded that "[a] conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape." 445 U.S. at 693, 100 S.Ct. at 1439. The Court rejected the government's contention that felony murder and rape were not the same offense under the same evidence test of *Blockburger*.

> The Government contends that felony murder and rape are not the "same offense" under *Blockburger*, since the former offense does not in all cases require proof of a rape; that is, D.C.Code § 22–2401 proscribes the killing of another person in the course of committing rape *or* robbery *or* kidnapping *or* arson, etc. Where the offense to be proved does not include proof of a rape—for example, where the offense is a killing in the perpetration of a robbery—the offense is of course different from the offense of rape, and the Government is correct in believing that cumulative punishments for the felony murder and for a rape would be permitted under *Blockburger*. In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense.
>
> There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it.

445 U.S. at 694, 100 S.Ct. at 1439:

The application of the same evidence test in *Sours* is also supported by the United States Supreme Court's holding in *Illinois v.*

*Vitale*, —— U.S. ——, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), a multiple prosecution case. In *Vitale*, respondent, a juvenile was convicted of failing to reduce speed to avoid an accident, a violation of § 11–601(a) of the Illinois Vehicle Code. The charge arose out of an accident in which an automobile driven by respondent struck and fatally wounded two small children. Subsequently, a petition for adjudication of wardship was filed against respondent in the Circuit Court of Cook County, charging Vitale with two counts of involuntary manslaughter. The Illinois Supreme Court upheld the dismissal of the second proceeding on the ground that it was barred by the double jeopardy clause. *In re Vitale*, 71 Ill.2d 229, 16 Ill.Dec. 456, 375 N.E.2d 87 (1978). The United States Supreme Court vacated the judgment and remanded the case for consideration whether the judgment was based on state or federal grounds. 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978). The Illinois Supreme Court certified that the judgment was based on federal constitutional grounds, and the United States Supreme Court again granted certiorari. 444 U.S. 823, 100 S.Ct. 42, 62 L.Ed.2d 29 (1979). The Court reaffirmed the principle that the double jeopardy clause not only prohibits multiple prosecutions for the same offense but also protects against imposing multiple punishments for the same offense. —— U.S. at ——, 100 S.Ct. at 2264. *Accord, Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2224, 53 L.Ed.2d 168 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The Court in *Vitale* also reaffirmed its holding in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977):

> In *Harris*, we held, without dissent, that a defendant's conviction for felony murder based on a killing in the course of an armed robbery barred a subsequent prosecution against the same defendant for the robbery. The Oklahoma felony murder statute on its face did not require proof of a robbery to establish felony murder; other felonies could underlie a felony–murder prosecution. But for the purposes of the Double Jeopardy Clause, we did not consider the crime generally described as felony murder as a separate offense distinct from its various elements. Rather, we treated a killing in the course of a robbery as itself a separate statutory offense, and the robbery as a species of lesser–included offense. The State conceded that the robbery for which petitioner had been indicted was in fact the underlying felony, all elements of which had been proved in the murder prosecution. We held the subsequent robbery prosecution barred under the Double Jeopardy Clause, since under *In re Neilsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), a person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser–included offense–an offense consisting solely of one or more of the elements of the crime for which he has already been convicted. Under *Brown*, the reverse is also true; a conviction on a lesser–included offense bars subsequent trial on the greater offense.

—— U.S. at ——, 100 S.Ct. at 2267.

Despite the Illinois Supreme Court's assertion in *Vitale* that "the lesser offense, failing to reduce speed, requires no proof beyond that which is necessary for conviction of the greater, involuntary manslaughter," and its conclusion that "the greater offense is by definition the 'same' as the lesser offense included within it," 71 Ill.2d at 239, 16 Ill.Dec. at 460, 375 N.E.2d at 91, the United States Supreme Court vacated the judgment and remanded the case for further proceedings "[b]ecause of our doubts about the relationship under Illinois law between the crimes of manslaughter and a careless failure to reduce speed to avoid an accident, and because the reckless act or acts the State will rely on to prove manslaughter are still unknown." —— U.S. at ——, 100 S.Ct. at 2267.

■ We are here forced to address the constitutional issue expressly reserved in *Whalen*, 445 U.S. at 690, 100 S.Ct. at 1435, 1437; *Simpson*, 435 U.S. at 11, 98 S.Ct. at 912; and *Iannelli*, 420 U.S. at 785–86 nn. 17–18, 95 S.Ct. 1293–94 nn. 17–18.

*See Jeffers*, 432 U.S. at 155, 97 S.Ct. at 2218. We must conclude, for the reasons set forth in *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), that the proof of the underlying felony–robbery first degree–does not require proof of a fact not also required to prove armed criminal action, or in other words, that proof of armed criminal action necessarily proves every fact required to establish the underlying felony. Consequently, the two offenses are the "same offense" for double jeopardy purposes, *Vitale*, —— U.S. at ——, 100 S.Ct. at 2266. *Whalen*, 445 U.S. at 694, 100 S.Ct. at 1439; *Harris*, 433 U.S. at 682, 97 S.Ct. at 2912; *Brown*, 432 U.S. at 167, 97 S.Ct. at 2226, and the double jeopardy clause prohibits the state from punishing appellant for both offenses. We believe that, because the double jeopardy clause prohibits punishing a person twice for the same offense, "the prosecution may not do in one trial what it is prohibited from doing in two trials." *Elmore v. State*, 382 N.E.2d 893, 894–95 (Ind. 1978). See cases that apply the rationale of *Harris v. Oklahoma* in the single prosecution context. *State v. Morgan*, 592 S.W.2d 796, 803 (Mo. banc 1980); *State v. Pinder*, 375 So.2d 836, 838 (Fla.1979); *Tyson v. State*, 386 N.E.2d 1185, 1193 (Ind.1979); *Mitchell v. State*, 382 N.E.2d 932, 934 (Ind. 1978); *Elmore v. State*, 382 N.E.2d 893, 894–95 (Ind.1978); *State v. Frye*, 283 Md. 709, 393 A.2d 1372, 1375 (1978); *Briggs v. State*, 573 S.W.2d 157, 159 (Tenn.1978). *See also State v. Neal*, 514 S.W.2d 544, 548 (Mo. banc 1974); *State v. Parsons*, 513 S.W.2d 430, 438 (Mo.1974).

If the vacation of our prior judgment and the remand of the case for reconsideration in light of *Whalen* was intended to lead this Court to adopt the view that the General Assembly is free to impose separate punishments for two crimes that constitute the same offense under the traditional same evidence test, we are unable to so read *Whalen* and we are not prepared to take that step. We believe that the United States Supreme Court has heretofore reserved that question as noted above. We believe that such a ruling would abolish the traditional double jeopardy protection against multiple punishments for the same offense. It would require bifurcation of the meaning of "same offense" under the double jeopardy clause. It would grant to the state legislature the power to define the meaning of "same offense" as used in the double jeopardy clause of the Constitution, a traditional judicial function. The implicit effect of such a holding would be that the double jeopardy clause would hereafter be only a limitation on the executive and judicial branches, but not on the legislative branch of government. We do not believe that it is appropriate for this Court to make such a ruling. If such a ruling is to be made, it is the responsibility of the United States Supreme Court to make it.

After thorough examination of the opinions in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), we have concluded that our original opinion and judgment in *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), was correct and should be reinstated as supplemented by our opinion today. We reverse the judgment of the trial court insofar as it denied appellant relief from his conviction for armed criminal action, and vacate and set aside that conviction. We affirm the judgment of the trial court insofar as it denied appellant relief from his conviction for robbery first degree.

BARDGETT, C. J., and SEILER, MORGAN and HIGGINS, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents in separate dissenting opinion filed and concurs in dissenting opinion of DONNELLY, J.

DONNELLY, Judge, dissenting.

In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court overruled *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937) and applied the Double Jeopardy Clause of the United States Constitution to the states.

In *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), a majority of this Court ordered a conviction under Missouri's armed criminal action statute set aside because it felt compelled to do so by general declarations of law made in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

On May 27, 1980, in *Missouri v. Sours*, —— U.S. —— , 100 S.Ct. 2935, 64 L.Ed.2d 820, the United States Supreme Court vacated the judgment of this Court in *Sours*, and remanded the case to this Court "for further consideration in light of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)."

Of course, the mandate of May 27, 1980, is the law of the case and is binding on this Court.

In *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), the United States Supreme Court stated "that the Fifth Amendment guarantee against double jeopardy * * * has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. * * *."

I agree with the conclusion of the principal opinion that the Missouri General Assembly intended that two separate punishments be imposed for first degree robbery and armed criminal action. I do not agree that the holdings in *Harris* and *Vitale*, both *second prosecution* cases, are pertinent to this *multiple punishments* case. *See State v. Neal*, 514 S.W.2d 544, 550, 551 (Mo. banc 1974) (Donnelly, C. J., concurring). *See also* Rules 23.05 and 24.07.

The essential question is: should this Court apply the holdings of *Harris* and *Vitale*, both *second prosecution* cases, in this *multiple punishments* case when we know that the United States Supreme Court declined the opportunity to apply the *Harris* holding in *Simpson v. United States*, 435 U.S. 6, 12, 98 S.Ct. 909, 913, 55 L.Ed.2d 70

(1978), also a *multiple punishments* case? I think not. In *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975), the Court stated that "a State may not impose * * * greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." *See also North Carolina v. Butler*, 441 U.S. 369, 376, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979).

In my view, the logic of *Whalen* is that the *multiple punishments* proscription of *Pearce* is satisfied if the *multiple punishments* in this case were intended and authorized by the General Assembly—to hold otherwise is to make the mandate of May 27, 1980, inscrutable.

I respectfully dissent.

RENDLEN, Judge, dissenting.

### INTRODUCTION

I respectfully dissent. The majority's mechanical treatment of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), "same offense" test as substantive double jeopardy doctrine is in my view a misapplication of that test and an exaltation of form over substance. The principal opinion decides the double jeopardy clause forbids conviction and punishment in a *single prosecution* for armed criminal action and robbery under *Blockburger*. The majority does so against a tapestry of dicta woven largely from *successive prosecution* cases and by skillful conversion of the canon for "statutory construction" prescribed by *Blockburger*, into a rigid doctrine of constitutional right. The Supreme Court's mandate that on reconsideration we be guided by *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), neither so requires nor permits. In this regard the present effort is little more than a recasting of our original opinion vacated by the Court.

William Scott Sours was charged with robbery first degree by means of a dangerous and deadly weapon (§ 560.120, RSMo 1969 and § 560.135, RSMo Supp.1975) and

armed criminal action (§ 559.225, RSMo Supp.1976) for participating in an armed robbery of a Mr. Quick Store in Jasper County. On October 5, 1977, Sours pled guilty to both charges and on January 5, 1978, was sentenced to five years imprisonment on the robbery conviction and three years imprisonment on the armed criminal action conviction, the sentences to run consecutively. See *Sours v. State*, 593 S.W.2d 208, 209–210 (Mo. banc 1980) (vacated —— U.S. ——, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980)).

It should be noted at the outset that the majority fails to address the important question of whether Sours' guilty plea constituted "a break in the chain of events" so as to preclude litigation of the double jeopardy issue in this post–conviction Rule 27.26 proceeding. See *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *Francis v. Henderson*, 425 U.S. 536, 541–542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976); *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Cf. *Jeffers v. United States*, 432 U.S. 137, 152, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977). Recently in *Weir v. State*, 589 S.W.2d 256 (Mo. banc 1979), this Court questioned the cognizability of a claim of double jeopardy in a Rule 27.26 proceeding following defendant's failure to raise the objection at the trial level. The majority fails to consider the rule announced by *Weir*, at 258:

> [I]t is now settled by numerous decisions in both the federal and state systems that where there is a deliberate

bypass, whether for strategic, tactical, or other reasons, of orderly state procedure, a movant is precluded from raising a constitutional issue on a post conviction motion.

Instead of eagerly seizing the constitutional issue, we should remand for a determination by the sentencing court whether Sours by pleading guilty has deliberately by-passed orderly state procedures [1] and only after a determination that he has not, should we address the far reaching federal constitutional question.

Turning to the constitutional issue, it was the framers' intent [2] that the Fifth Amendment embody the common law's double jeopardy protection against a defendant's *reprosecution* following conviction or acquittal upon a criminal charge.[3] See *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *United States v. Wilson*, 420 U.S. 332, 340–342, 95 S.Ct. 1013, 1020–1021, 43 L.Ed.2d 232 (1975). James Madison tendered the original draft of the Fifth Amendment,[4] later amended to its present form, midst concern that a defendant's right to new trial not be abridged by a conviction erroneously obtained. See *Wilson, id.* citing I Annals of Congress 753 (1789). At the time of adoption the limited number of common law felonies, e. g., rape, robbery, murder, arson and burglary allowed for ready application and more certain protection for criminal defendants under the double jeopardy clause. Today, given the proliferation of complex statutory crimes, it is recognized that the doctrine's

---

1. The "deliberate bypass" standard employed by our courts in determining whether constitutional issues improperly preserved at trial may be raised in post–conviction proceedings is similar to the "cause and prejudice" standard employed in the federal system for making determination in habeas proceedings. *Wainwright v. Sykes*, 433 U.S. 72, 95 n.1, 97 S.Ct. 2497, 2500 n.1, 53 L.Ed.2d 594 (1977) (Stevens, J., concurring).

2. For a discussion of the historical development of the concept of double jeopardy see *Bartkus v. Illinois*, 359 U.S. 121, 151–155, 79 S.Ct. 676, 695–697, 3 L.Ed.2d 684 (1959) (dissenting opinion of Justice Black).

3. At common law double jeopardy was in the nature of a plea of abatement. The technical plea was either autrefoits acquit or autrefoits convict. See 2 Hawkins, Pleas of the Crown, 522–537 (6th ed. 1777). Either plea was an absolute bar to a *subsequent* prosecution as "the party ought not to be brought twice into danger of his life for the same crime." *Id.* at 534.

4. The original proposal would have protected a defendant from "more than one punishment or one trial for the same offense . . . ." *United States v. Wilson*, 420 U.S. 332, 341, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975), citing I Annals of Congress 434 (1789).

original scope cannot provide complete and certain answers in many cases. Nevertheless in the constitutional construction process, we are guided by the purposes and policies underlying the constitutional protections afforded by the framers and those who ratified our Bill of Rights.

The fountainhead of that aspect of double jeopardy jurisprudence described as the double punishment doctrine appears to be *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873). There the sentencing court exceeded the legislative authorization for punishment of a statutory crime. Defendant was convicted of stealing post office property for which the statutes provided as punishment, imprisonment for not more than one year *or* a fine of $10 to $200. The court however sentenced Lange to one year's imprisonment *and* a fine of $200. It was in that context of the trial court having exceeded its statutory authority that the double punishment doctrine had its origins. On review, the Court was concerned with the trial court having exceeded the legislative authorization *not* the legislature's constitutional authority to proscribe certain acts as crimes and prescribe punishment therefore. The Court at 176 stated:

> We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments *to which alone the law subjected him*, the power of the court to punish further was gone. That the principle we have discussed then interposed its shield, and forbid that he should be punished again for that offense. (Emphasis added.)

*Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), which guides us here, emphasized that the decision in terms of "double punishment" turns on the legislative intent, stating that "the *dispositive* question, therefore, is whether Congress did so provide." 445 U.S. at 688, 100 S.Ct. 1432 at 1436, 63 L.Ed.2d at 722.

The double punishment doctrine does not constitute a substantive limitation on the legislature's power to define and punish crimes. See *Whalen v. United States*, 445 U.S. 695–696, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715, 726 (1980) (concurring opinion of White, J.); 445 U.S. 696–699, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715, 726 (concurring opinion of Blackmun, J.) Westen and Drubel, Towards A General Theory of Double Jeopardy, Sup.Ct.Rev. 81, 112–115 (1978). See also Note "Twice in Jeopardy" 75 Yale L.J. 262, 311–313 (1965). The Court in *Whalen* addressed the multiple punishment issue in terms of whether the judicial action had exceeded the legislative authorization. After a discussion of *Lange*, which as noted above can best be described as a legislative authorization case, the Court held, "[t]he Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principal that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress." *Whalen*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715, 722 (1980).

The reason for this conclusion seems self apparent. To say that the legislature can punish crime X by life imprisonment but that it cannot define certain acts as crime X $^1$ punishable by five years to life and crime X $^2$ punishable by three years to life respectively, employs an intellectual artifice providing the criminal defendant little or no additional protection. The majority holds that under the then applicable statutes a defendant could be convicted of armed robbery punishable by five years to life or of armed criminal action and sentenced to three years to life,[5] but could not be convicted of both in the same proceeding and if

---

5. Section 560.135, RSMo 1969, provided that a person convicted of robbery in the first degree by means of a dangerous and deadly weapon could be sentenced to death or imprisonment

ranging from a minimum of 5 years to life. Those convicted of robbery in the first degree could be sentenced only to imprisonment ranging from a minimum of 5 years to life. *Id.*

so convicted the armed criminal action conviction must be vacated. (One might ask, why the armed criminal action conviction?) The principal opinion skirts the Double Jeopardy Clause's historical purpose to protect the defendant from harassment, relitigation, and judicial usurpation of the legislative authority to punish. See Note, Twice in Jeopardy, 75 Yale L.J. 262, 266–267 (1965). Instead the majority seeks to transform the provision protecting against double punishment into a diluted analogue of the Eighth Amendment without measurably enhancing the defendant's protections as shown above.[6] Though the Eighth Amendment remains a vital and essential safeguard against excessive punishment by the legislature (see *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977); *State v. Higgins*, 592 S.W.2d 151 (Mo. banc 1979), appeal dismissed 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980), redesigning the Fifth Amendment to serve the purpose filled by the Eighth serves no legitimate function[7] and violates the canons of orderly constitutional construction.

The only apparent justification for the majority's manipulation of the double pun-

---

Subsequently in 1975 the legislature amended the statute and provided that the punishment for both robbery in the first degree and robbery in the first degree by means of a dangerous and deadly weapon would be imprisonment ranging from a minimum of 5 years to a life term. § 560.135, RSMo Supp.1975.

Section 559.225, RSMo Supp.1976 provides:

1. Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of three calendar years.

2. Any person convicted of a second offense of armed criminal action shall be punished by imprisonment by the division of corrections for a term of not less than five years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committee [sic] by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of five calendar years.

3. Any person convicted of a third or subsequent offense of armed criminal action shall be punished by imprisonment by the division of corrections for a term of not less than ten years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of ten calendar years.

4. The provisions of this section shall not apply to the felonies defined in sections 559.-005, 564.590, 564.610, 564.620, 564.630, and 564.640, RSMo.

6. It is true that conviction of both robbery in the first degree and armed criminal action will affect a prisoner's eligibility for parole. See Rules and Regulations Governing the Granting of Paroles, Conditional Releases, and Related Procedures, Missouri Board of Probation and Parole, pp. 8–10 (1979). However such delay in parole eligibility would be present upon a conviction for armed criminal action alone. *Id.*, § 559.225, RSMo Supp.1976. The mere fact that multiple convictions occur and consecutive sentences are imposed does not alter eligibility for parole in any way. Rules and Regulations Governing the Granting of Paroles, Conditional Releases, and Related Procedures, Missouri Board of Probation and Parole, pp. 11–12 (1979).

7. This Court has held that punishment enhancement schemes which impose additional liability upon conviction of a crime if certain facts are shown to exist (i. e., previous convictions) are not violative of double jeopardy. See § 556.280, RSMo 1969 (repealed); § 558.016, RSMo 1978; *State v. Johnstone*, 335 S.W.2d 199, 204 (Mo.1960), *cert. denied*, 364 U.S. 842, 81 S.Ct. 81, 5 L.Ed.2d 66 (1960). It is difficult to perceive a functional difference between a sentence enhancement scheme and the "armed criminal action–first degree robbery consecutive punishment plan" the majority now holds is forbidden by the Fifth Amendment to the United States Constitution.

ishment doctrine is to guard against prosecutorial and judicial arbitrariness. A constitutional issue of some dimension would be presented if the statutory pattern allowed random and capricious results in which some defendants were convicted of one of the constituent crimes and others convicted of both without any ascertainable justification. Such is not the case under our statutes. The legislature, as recognized by the majority, clearly intended that a person committing a felony with a firearm be convicted and punished for both the underlying felony and armed criminal action. "Any person who commits any felony under the laws of this State by, with, or through the use, assistance, or aid of a dangerous or deadly weapon *is also guilty of the crime of armed criminal action* . . . . The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon." Section 559.225, RSMo Supp.1976. The uncertainty as to legislative intent in *Whalen* is not present here. Further, it was noted there that "[t]he Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so." *Whalen*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715, 722 (1980). The penalties imposed here were explicitly provided by the legislature. The problem of ambiguity for which the rule of lenity provides an important safeguard against prosecutorial and judicial arbitrariness, simply is not present. In sum, when the legislative intent that an act be punished as two crimes is clear, the potential for arbitrariness by prosecutors and judges is de minimus. As a result, no issue of constitutional dimension arises under the Fifth Amendment by the operation of our Missouri armed criminal action statute.

An examination of earlier United States Supreme Court opinions and recent summary actions by that Court points up the validity of our Missouri armed criminal action scheme under which a person who commits a felony with a dangerous and deadly weap-

on may be found guilty of two offenses, armed criminal action and the underlying felony. In *Jeffers v. United States*, 432 U.S. 137, 147–150, 97 S.Ct. 2207, 2214–15, 53 L.Ed.2d 168 (1977), the Court assumed arguendo, that 18 U.S.C. 846 (conspiracy to distribute heroin) was a lesser included offense of 18 U.S.C. 848 (conducting an enterprise to distribute heroin), and held that a defendant convicted of 846 in a prior proceeding had no double jeopardy claim in respect to a later 848 prosecution because the defendant had earlier successfully moved to sever the charges. A fortiori, it may be said that Jeffers, who was tried and convicted in two proceedings for two offenses, one of which the Court assumed to be a lesser included offense, could have been tried for both in a single proceeding and so it is with Sours.

The majority's reliance on *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), is misplaced. First, *Harris* and *Brown* were successive prosecution cases involving the serious risks of vexation and harassment to criminal defendants attendant in multiple prosecutions. Further, the precise issue presented here was specifically reserved by the Court in *Simpson v. United States*, 435 U.S. 6, 11–12, 98 S.Ct. 909, 912–913, 55 L.Ed.2d 70 (1978), decided some eight months following *Harris*, which teaches that *Harris* was not, as asserted by the majority, dispositive of the issue here. I might add that the mandate of the Court in *Sours* does not direct us to decide this case "in the light of *Harris v. Oklahoma*." *Harris* merely held that a defendant's conviction of felony murder based on a killing in the course of an armed robbery barred a *subsequent* prosecution against that same defendant for robbery. *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). *Brown* decided only that once a defendant was convicted of misdemeanor joyriding, the State was barred by double jeopardy from convicting the defendant of the greater included offense of felony auto theft in a *subsequent* prosecution. "[T]he

Fifth Amendment forbids *successive* prosecution and cumulative punishment for a greater and lesser included offense," (Emphasis added), *Brown v. Ohio*, 432 U.S. 161 at 169, 97 S.Ct. at 2227 (1977). Indeed the Court in *Brown* reiterated 432 U.S. at 165, 97 S.Ct. at 2225 the freedom of the legislature to proscribe criminal conduct and prescribe punishment.

[T]he Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225.

Not only does the majority disregard the Court's consistent concern in decisions from *Lange* to *Whalen* with the scope of legislative authorization as to double punishment claims, it also fails to recognize that the defendant's interest in finality, the core value furthered by the Double Jeopardy Clause, is not implicated in unitary prosecution cases. The prime consideration in this unitary prosecution case is the legislative objective of deterring violent offenders by increasing penalties for felonies committed

with a weapon.[8] The principal opinion effectively thwarts that objective.

The majority fails to discuss the recent action of the Court on a nearly identical issue dismissing an appeal for want of a substantial federal question. The Court dismissed the appeal from a Michigan Supreme Court decision holding that consecutive punishment does not violate the federal constitution's Fifth Amendment. *Wayne County Prosecutor v. Recorder's Court Judge* and *People v. Brintley*, 406 Mich. 374, 280 N.W.2d 793 (Mich.1979) appeal dismissed sub nom. *Brintley v. Michigan*, 444 U.S. 948, 100 S.Ct. 418, 62 L.Ed.2d 317 (1979). There, the Michigan Supreme Court addressed the constitutionality of convictions under a Michigan statute (similar to the Missouri armed criminal action statute) providing that a felony committed by a person with a firearm constituted an additional offense, for which one convicted was to be punished consecutively to the sentence imposed on the underlying felony. Defendant contended his convictions violated rights protected by the Fifth Amendment. See MCLA 750.227b(b);[9] *Id.* at 794. The Michigan Court, in a persuasive and comprehensive opinion dealing with the precise question here presented, held that by enacting the felony–firearm statute the legislature created a separate crime distinct from the underlying felony and intended that consecutive punishments be imposed.

8. At the time of the enactment of the armed criminal action statute law enforcement authorities initiated a publicity campaign warning "use a gun, go to prison." Whether the armed criminal action statute sub judice furthered these important goals is a matter for legislative determination. Fixing punishment for crimes defined by statute is the province of the legislature, not the courts. *State v. Alexander*, 315 Mo. 199, 285 S.W. 984, 985 (1926); *State v. Higgins*, 592 S.W.2d 151 (Mo. banc 1979), appeal dismissed, 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980).

9. MCLA 750.227b provides:

(1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 or section 227a, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned

for 5 years. Upon a third or subsequent conviction under this section, the person shall be imprisoned for 10 years.

(2) The term of imprisonment prescribed by this section shall be in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.

(3) The term of imprisonment imposed under this section shall not be suspended. The person subject to the sentence mandated by this section shall not be eligible for parole or probation during the mandatory term imposed pursuant to subsection (1).

As is readily apparent from the face of the statute, it is indistinguishable in all important details from the Missouri armed criminal action statute. See n.8 *supra*.

*Brintley*, 280 N.W.2d 793 at 795–796. In one of the cases·involved in that consolidated appeal, *People v. Brintley*, the court firmly concluded that conviction of both felony firearm and armed robbery offenses (described as the "same offense" under the majority opinion here) was not violative of the federal constitution's protection against double jeopardy. *Id.* at 799–800. Of prime importance here, the United States Supreme Court dismissed the appeal from that judgment "for want of substantial federal question." 444 U.S. 948, 100 S.Ct. 418, 62 L.Ed.2d 317. The Court's refusal to disturb the conclusion of the Michigan Supreme Court that conviction of both felony–firearm and armed robbery in a single proceeding did not violate the Fifth Amendment's prescription has precedential value as a disposition on the merits. See *Hicks v. Miranda*, 422 U.S. 332, 344–345, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). We are bound to follow that summary decision under the command of the Supremacy Clause as to all federal questions. Art. VI, § 2, United States Constitution. As recently explained by the United States Supreme Court, "[s]ummary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley*, 432 U.S. 173 at 176, 97 S.Ct. 2238 at 2240 (1977). Here the majority has reached a decision diametrically opposed to the conclusion reached in *Brintley* and seems unconcerned that the appeal was dismissed by the Supreme Court for want of a substantial federal question. In the jurisdictional statement to the appeal filed by Brintley, a claim was made that conviction of both felony–firearm and armed robbery violated the double jeopardy doctrine.[10] The Supreme Court necessarily rejected that claim when it dismissed the appeal. Yet the majority ignores or overlooks *Brintley* and decides the same issue on federal constitutional grounds. While such action is defensible in the context of adjudication of state constitutional provisions, it does not square with the command of the Supremacy Clause and the role of state courts in the federal system when federal questions are presented.

Neither do subsequent doctrinal developments justify the majority's disregard of the Court's summary action in *Brintley*. As previously noted in *Whalen*, the Court's most recent pronouncement, the constitutional issue was discussed in terms of whether the punishment imposed exceeds the legislative authorization. Having determined Congress did not intend consecutive punishments by enacting D.C.Code 23–112, the Court stated, "Congress is clearly

---

**10.** In the jurisdictional statement filed on October 15, 1979, in *Brintley v. Michigan*, No. 79-5506, appeal dismissed, 444 U.S. 948, 100 S.Ct. 418, 62 L.Ed.2d 317 (1980), Brintley's counsel argued that conviction and consecutive punishment in one proceeding for armed robbery and felony firearm under MCLA 750.227b constituted double jeopardy as multiple punishment. The argument headings contained in the statement of jurisdiction spell out this claim. "I. THE DOUBLE JEOPARDY CLAUSE IS A SUBSTANTIVE LIMITATION ON THE MICHIGAN LEGISLATURE." Appellant's Statement of Jurisdiction, page 8. "II. THE VIOLATION OF § 750.227b ALLEGED IN COUNT II OF EACH INFORMATION REQUIRED PROOF OF ALL ELEMENTS CONTAINED IN COUNT I, AND THUS THE OFFENSES WERE THE SAME FOR DOUBLE JEOPARDY PURPOSES." Appellant's Statement of Jurisdiction, page 11. "III. CONVICTION UNDER § 750.227b REQUIRES PROOF OF A SPECIFIC FELONY." Appellant's Statement of Jurisdiction, page 12. "IV. MR. BRINTLEY'S SENTENCE HAS BEEN TWICE AUGMENTED UNDER TWO STATUTES WHICH ARE THE SAME FOR DOUBLE JEOPARDY PURPOSES." Appellant's Statement of Jurisdiction, page 15. "V. THE DOUBLE JEOPARDY CLAUSE BARS MULTIPLE CONVICTIONS ARISING FROM A SINGLE ACT OCCURRING AT ONE PLACE, AT ONE TIME, AND FOR ONE PURPOSE." Appellant's Statement of Jurisdiction, page 16. The Supreme Court necessarily rejected all these contentions in respect to MCLA 750.227b virtually identical in its consecutive punishment scheme to § 559.-225, RSMo Supp.1976. Such rejection is of precedential value in this case and we are bound to follow it. *Hicks v. Miranda*, 422 U.S. 332, 344, 345, 95 S.Ct. 2281, 2289, 2290, 45 L.Ed.2d 223 (1975).

free to fashion exceptions to the rule it chose to enact in § 23-112." *Whalen*, 445 U.S. 684, 695, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715, 725 (1980). We might add, if the Congress has such latitude, why not the Missouri General Assembly?

I conclude the majority opinion confers upon courts a role neither contemplated by those who ratified the Fifth Amendment nor supported by subsequent Supreme Court decisions interpreting it. As Justice Frankfurter analyzed a similar claim, "In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, these are peculiarly questions of legislative policy." Citations omitted. *Gore v. United States*, 357 U.S. 386 at 393, 78 S.Ct. 1280 at 1285, 2 L.Ed.2d 564 (1958). I submit the majority opinion in the name of double punishment doctrine invades the power of the legislature to define crimes and prescribe punishment. Accordingly, I must dissent.