STATE of Missouri, Respondent,

v.

Ray A. THOMPSON, Appellant.

No. WD 31513.

Missouri Court of Appeals,
Western District.

March 30, 1981.

Peter N. Sterling, Acting Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Catheryn B. Starke, Asst. Atty. Gen., Kansas City, Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SHANGLER, Judge.

The defendant Thompson appeals from convictions and consecutive sentences of 15 years for robbery second degree [Count I], 75 years for armed criminal action [Count II] and 15 years for kidnapping [Count III]. The court found the defendant both a *persistent offender* and a *dangerous offender* under § 558.016, RSMo 1978, and enhanced the robbery sentence [Count I] by 15 years and the kidnapping sentence [Count III] by 15 years. The punishments were for a total of 135 consecutive years.

The convictions rest on a robbery of an automobile from the person of one McLin, her forced asportation in the vehicle, threats to her in the course, the robbery of other goods from her person, and eventual release. The proof of the offenses rested, among other evidence, on the identification of the defendant as the perpetrator. The defendant raised the competency of that evidence in limine by a motion to suppress the lineup and in-court identifications made by witness McLin, and by the motion for new trial.

The evidence most favorable to the verdict shows that McLin had concluded purchases at a market and as she proceeded to place them in her car, an object pressed into her side. She turned, looked down, and saw a man [identified as defendant] crouched with a pistol aimed at her. He looked directly at her and ordered her into the car. She noticed that he wore an orange turtleneck sweater extended over the neck, chin, mouth and beneath the nose. The nose, itself, and forehead were visible; the eyes were distinctively ruddy. She noticed the other garb: jeans, short jacket and a cap atop the head from which protruded hair in unusual braids. The man pushed her into the car, a red and white Mercury, took the keys, and drove off. The abduction was at about 2:30 in the afternoon. She entreated the man to take the car and let her go, but he told her to shut up. He spied a police car ahead, and directed that she keep her head to the side or he would "blow her brains out"—that he had killed five people that week and "one more black bitch . . . wouldn't make no difference." The car finally stopped at a wooded area. She was told to get out and "run in front of the car before he blowed my brains out." The man took the money from her wallet, kept the grocery purchases, and drove off with the vehicle. McLin ran into Swope Park woods and hid behind a clump of snow, fearful that the gunman meant to kill her. She then ran to the road and was given assistance by a motorist. The lapse between abduction and release was about an hour and a half. Some three days later, McLin identified the defendant Thompson as the robber-abductor from among a display of four black males conducted by the police. [The defendant was taken into custody while in operation of the stolen vehicle after pursuit and capture.]

■ One point of error on appeal asserts that the preindictment and trial identification of the defendant by witness McLin were unreliable. The former by virtue of impermissibly suggestive police procedures and the latter identification from

want of time to observe. The identification evidence was received at the trial without timely objection, however, so the contention of error was not preserved. *State v. McFadden*, 530 S.W.2d 440, 444[5, 6] (Mo. App.1975). The merits of the contention considered, the line-up procedures were not tainted with undue suggestiveness, nor was there want of opportunity for the witness during the prolonged episode of abduction, asportation and robbery to observe salient aspects of the features of the perpetrator. That the witness did not notice prominences on the forehead of the defendant and was inconsistent in particulars among the various recountals of that description, does not render the in-court identification so untrustworthy as to invalidate the proof. The garb used by the robber to distort identity may very well have succeeded to conceal that distinctive facial feature. The identification by witness McLin of the defendant as the criminal was insistent from the very first identification encounter. In the totality of circumstances [according to the prescriptions of *State v. Higgins*, 592 S.W.2d 151, 160[13, 14] (Mo. banc 1979)], the in-court identification by the witness that the defendant was the abductor-robber rests on reliable evidence and serves as an independent basis for the competency of the proof. *State v. White*, 549 S.W.2d 914, 917[2] (Mo. App.1977).

The red and white Mercury automobile stolen from McLin was detected in a parking lot by police. The officers established surveillance. A black male entered the car, started up and drove away. The police car followed, then sounded the siren and gave pursuit. The other automobile slid into a snow bank and the driver [identified as the defendant] emerged. The officer recognized him as Ray Thompson, jumped out of the car, and shouted: "Thompson, police! Halt!" The man gave no heed but ran off into an apartment project area where, after a chase and search, he was apprehended in the bathroom of a vacant flat. The defendant contends that this shout of recognition amounts to evidence of a separate and distinct crime from that charged at the trial,

and so is prejudicial. The objection to the testimony was delayed until after the full narrative of chase, recognition and identification of the driver as the defendant on trial were fully in evidence, and then repeated. Even then, the only remedy sought was for a mistrial.

A trial court reserves the exercise of so drastic a correction of error for those instances when a demonstrable prejudice can be expunged by no other means. *State v. Stowers*, 580 S.W.2d 516, 519[3, 4] (Mo.App. 1979). The prejudice from the remark of recognition, however, is far from palpable. It is a remote inference that the shout: "Thompson, police! Halt!" means the defendant was known to the officer from other illicit conduct, and so proves a crime other than the charge on trial. The officer could have as readily known Thompson from community or other events. These speculations aside, the evidence bears relevantly to prove the offenses charged at the trial, if for no other reason than to show that the police clearly identified themselves to the defendant, so that his flight from arrest—after command to halt—was evidence of guilt. *State v. Rutledge*, 524 S.W.2d 449, 458[14] (Mo.App.1975).

The defendant contends next that the abduction and asportation of McLin under threat was to accomplish the robbery of her automobile and so, as an incident of the robbery, was not subject to prosecution as a separate crime—kidnapping. The defendant cites kidnapping statute, § 565.100, RSMo 1978, and the commentary to the [then] proposed criminal code to sustain that exegesis. We do not suggest the contention has validity under the evidence, but rather do not reach a review because the claim of error was not preserved in the motion for new trial. *State v. Wells*, 585 S.W.2d 267, 268[4, 5] (Mo.App.1979).

The court exercised the authority given by §§ 558.016 and 558.021 to extend the term of a *persistent* or *dangerous offender* to enhance the punishment of 15 years returned by the jury against the defendant on each, Count I [robbery] and Count III [kid-

napping] by an additional 15 years each. The defendant contends that the judgment unlawfully declared the 15-year enhancements as additional sentences rather than merely extensions of the sentences returned by the jury, so that the adjudications against the defendant on the three counts result, not in three convictions, but in five convictions. The defendant contends also that the court neglected the directive of § 558.021.1(3) that specific findings by the court as to the *existence of the basis for the extended term* precondition imposition.[1]

 The extended term section 558.-016[2] of the recently adopted criminal code invests a trial court with the altogether new power to enhance a sentence of imprisonment beyond that determined by the jury or prescribed by statute as punishment for the offense. The *persistent offender* component of the statute [§ 558.016.2] replaces and reclothes the former second offender procedure [repealed § 556.280]. The *dangerous offender* component of the statute [§ 558.016.3], however, enacts an entirely unique theory of punishment. The imposition of an extended term by either means, however, rests on the proof of a charge

beyond the offense for which the jury returned conviction. The due process of law concomitant by which a valid criminal conviction obtains, therefore, also attends the determination of the new matter upon which a valid extension of term rests. *Specht v. Patterson*, 386 U.S. 605, 610[5], 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967); The New Missouri Criminal Code: Manual for Court Related Personnel, §§ 3.3, 3.4. The statute heeds the constitutional necessity for notice and hearing by provisions that the information formally plead the intention to invoke the extended term penalty and the facts upon which that imposition rests [§ 558.021.1(1) ], proof by evidence in open court subject to the cross-examination and opportunity to defend [§ 558.021.1(2) ], and the determination of basis for the extended term by specific finding—presumably, beyond a reasonable doubt [§ 558.021.-1(3) ]. *State v. Berry*, 609 S.W.2d 948, 954[20] (Mo. banc 1980).

 That the statute, conformed to the exigency of due process, prescribes a separate proceeding after the adjudication of guilt to adjudicate further the issue of an extended sentence, however, does not mean

---

1. § 558.021. Extended term procedures
 1. The court shall not impose an extended term under section 558.016 unless
 (1) The indictment or information, original, amended or in lieu of an indictment, pleads all essential facts warranting imposition of an extended term; and
 (2) After a finding of guilty or a plea of guilty, a sentencing hearing is held at which evidence establishing the basis for an extended term is presented in open court with full rights of confrontation and cross-examination, and with the defendant having the opportunity to present evidence; and
 (3) The court determines the existence of the basis for the extended term and makes specific findings to that effect.
 2. Nothing in this section shall prevent the use of presentence investigations or commitments under sections 557.026 and 557.031, RSMo.
 3. At the sentencing hearing both the state and the defendant shall be permitted to present additional information bearing on the issue of sentence.

2. § 558.016. Extended terms for dangerous offenders
 1. The court may sentence a person who has pleaded guilty to or has been found guilty

of a class B, C, or D felony to an extended term of imprisonment if it finds the defendant is a persistent offender or a dangerous offender.
 2. A "persistent offender" is one who has been previously convicted of two felonies committed at different times and not related to the instant crime as a single criminal episode.
 3. A "dangerous offender" is one who:
 (1) Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; and
 (2) Has been previously convicted of a class A or B felony or of a dangerous felony.
 4. The total authorized maximum terms of imprisonment for a persistent offender or a dangerous offender are:
 (1) For a class A felony, any sentence authorized for a class A felony;
 (2) For a class B felony, a term of years not to exceed thirty years;
 (3) For a class C felony, a term of years not to exceed fifteen years;
 (4) For a class D felony, a term of years not to exceed ten years.

that the term of punishment declared by the jury verdict and the term of punishment as extended adjudge two separate sentences against the defendant. The code shows a different scheme. In the usual sequence of criminal procedure, the imposition of sentence follows upon the adjudication of guilt. [§ 557.036.1]. Where the defendant is found to be a persistent or dangerous offender, however, "the court shall proceed as provided in § 558.016." [§ 557.036.3(2)(a)(b)]. That latter section authorizes that the *total* maximum term for a persistent or dangerous offender convicted of a class B felony [second-degree robbery] shall be "*a term* of years not to exceed thirty years." [§ 558.016.4(1)]. The code clearly contemplates that the determination of *persistent* or *dangerous offender* [any more than the adjudication of *habitual criminal* under the second offender act now repealed—*State v. Maxwell*, 411 S.W.2d 237, 239[1, 2] (Mo.1967)] does not constitute a separate offense, but that a single sentence culminates from a single accusation and adjudication of guilt. *Sours v. State*, 603 S.W.2d 592, 605 (Mo. banc 1980); *North Carolina v. Pearce*, 395 U.S. 711, 717[1], 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The determination of persistent or dangerous offender results in one extended term, not two separately imposed. *State v. Johnson*, 605 S.W.2d 151, 155[8] (Mo.App.1980).

■ The persistent and dangerous offender procedures merely *allow*, they do not compel, the court to extend sentence. § 558.016.1. Thus, the imposition of sentence and judgment for a conviction returned on an information which alleges also the basis for an extended term of punishment, is properly deferred until the court adjudicates the issue and then determines from the full sources [§ 558.021.2 and 3] the condign enhancement—if any. The New Missouri Criminal Code: Manual for Court Related Personnel § 3.3.

The defendant Thompson complains that the extended sentences imposed by the trial court on Count I [robbery] and Count III [kidnapping] were not single and unitary, as contemplated by the statute, but double and separate, and so invalid.

The indictment pleaded three separate counts: robbery, armed criminal action and kidnapping. To enhance punishment on Count I and Count III, the indictment pleaded also that the defendant Thompson was both a persistent and a dangerous offender within § 558.016. The jury returned verdicts of guilty on each count and declared sentences on Count I [robbery] of 15 years, on Count II [armed criminal action] of 75 years and on Count III [kidnapping] of 15 years. In due course, the motion for new trial was overruled and the court gave allocution, pronounced judgment in accordance with the verdicts of the jury, and ordered that the sentences run consecutively. In immediate sequence, the court received evidence from the prosecutor of prior convictions to prove the issue of persistent offender, and then took notice of the evidence of the prosecutions under the indictment to prove the issue of dangerous offender. At the conclusion of the evidence the court adjudged: "that defendant is both a persistent offender and a dangerous offender . . . [and therefore] enhances the sentence in Count I an additional fifteen years [and] the punishment in Count III an additional fifteen years. All of said sentences are to be consecutive."

■ On the face, the two separate impositions of sentences—once upon the jury verdicts and again upon the court determination of persistent and dangerous offender—compound a single sentence into two so that the convictions on the three counts result in five sentences, rather than three. That procedure violates both the rationale of the statutes [§§ 557.036, 558.016 and 558.021] that under a persistent offender or dangerous offender adjudication, the court shall assess punishment in the first instance by a single—albeit enhanced—sentence. *State v. Hampton*, 607 S.W.2d 225, 226[4, 5] n. 1 (Mo.App.1980). The jury declaration of punishment does not bear on that exercise of judicial function. On the face, also, the separate sentences on Count I and the separate sentences on Count III treat the extended sentence not as an enhancement of

punishment but as an additional punishment for the same offense, and so offends constitutional double jeopardy. *Sours v. State*, 603 S.W.2d 592, 603 (Mo. banc 1980); *North Carolina v. Pearce*, 395 U.S. 711, 717[1], 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The procedure also treats the extended term inquiry as a separate prosecution and so amounts to a reprosecution after conviction, a practice also within the prohibition of double jeopardy. *O'Clair v. United States*, 470 F.2d 1199, 1203[4, 5] (1st Cir. 1972).

We cannot determine from the sentences adjudged on Count I and Count III: the 15-year term returned by the jury and imposed by the court as enhanced by the 15-year term imposed by the court and made consecutive to the sentence adjudged on the jury verdict—whether the court understood its statutory prerogative under §§ 557.036 and 558.016 to decide and assess sentence in the first instance. The maximum extended term authorized for each, robbery in the second degree and kidnapping, [class B felonies] is a term of years *not to exceed thirty years.* § 558.016.4(1). The compound sentences on each Count I and Count III do not exceed the statutory limit, but are not derived validly. Count I and Count III are remanded, therefore, for adjudgment of no more than a single extended term on each count.

 The defendant Thompson contends that the extended terms were not validly adjudicated for the additional reason that they do not rest on specific findings of the basis for the enhanced punishments. The extended term procedures of § 558.021 provide:

1. The court *shall not impose an extended term* under section 558.016 *unless*
 (1) The indictment or information . . . pleads all essential facts warranting imposition of an extended term; and
 (2) After a finding of guilty . . . a sentencing hearing is held at which evidence establishing the basis for an extended term is presented in open court with full rights of confrontation and cross-examination, and with the defendant having the opportunity to present evidence; and
 (3) *The court determines the existence of the basis for the extended term and makes specific findings to that effect.* [emphasis added]

The peremptory tone of the statute—at least as to subsection (2)—is only ostensible. Our Supreme Court en banc has determined that the procedure to determine the basis for the extended term, with attendant rights of confrontation and cross-examination and opportunity to make proof, need not entail new evidence—but may rest on judicial notice of the conviction proceedings. *State v. Berry*, 609 S.W.2d 948, 954[20] (Mo. banc 1980). [But see, concurrence in part and dissent in part of Bardgett, C. J.; dissent of Seiler, J.]; The New Criminal Code: Manual for Court Related Personnel, § 3.4.

The defendant does not complain of the evidential aspect of the extended term proceeding, however, but only that the findings of fact were not determined as predicate to enhanced sentence as directed by subsection (3) of the statute. At the conclusion of the proofs on the indictment allegations of persistent offender and dangerous offender the court recited:

The Court does find that the defendant is one who has been previously convicted of two felonies at different times, and not related to the instant crime.

The Court further finds that defendant is being sentenced for a felony, during the commission of which he knowingly endangered or threatened the life of another person, or knowingly threatened to inflict serious physical injury on another person.

The Court, therefore finds that defendant is both a persistent offender and a dangerous offender.

The Court, therefore, enhances the sentence . . . . The theory of the notice by indictment, adversary hearing, and determinations of fact anew, antecedent to an extended term adjudication under § 558.021 is that the imposition of an enhanced sentence goes beyond the verdict of guilty and so must be sustained by an independent basis

of fact determined by due process of law. *Specht v. Patterson*, 386 U.S. 605, 610[5], 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967). Our Supreme Court en banc determined in *State v. Berry*, supra, l.c. 954[20] that the extended term procedure for *dangerous offender* does not require new evidence but may rest on the judicial notice of the conviction proceedings recently concluded. The finding of the trial court, antecedent to imposition of enhanced punishment, that the "defendant had previously been convicted of a dangerous felony, forcible rape . . . and defendant had 'knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person' " was the predicate for enhancement of sentence. The findings of the trial court to extend the term against the defendant Thompson as a *dangerous offender* are without distinctive difference. That contention is denied on the authority of *State v. Berry*, supra. [But see, concurrence in part and dissent in part of Bardgett, C. J., and dissent of Seiler, J.] The extended terms of Count I and Count III rest on evidence of dangerous offender presented and found.

A trial court determination of *persistent offender*, however, necessarily rests on new evidence not given to the jury,[3] so that the findings are not made implicit by the conviction, but must be found expressly as the basis for the extended term by *specific findings to that effect*. § 558.021.1(3). That conforms to the concern of due process that a punishment enhanced beyond that otherwise allowable under a jury conviction of guilt rest on an independent basis of evidence. *Specht v. Patterson*, 386 U.S. 605, 610[5], 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967). The decisions under superseded § 556.280(2) [Habitual Criminal Act] that the neglect of the judge to enter specific findings did not invalidate the effect of

that section [*State v. Blackwell*, 459 S.W.2d 268, 272[3] (Mo. banc 1970)] have no authority as precedent. The scheme of the Habitual Criminal Act was merely to transpose the duty to sentence from the jury to the judge—but only within the limits permitted for that offense. *State v. Maxwell*, 376 S.W.2d 170, 174[12, 13] (Mo.1964). The *persistent offender* statute, rather, *extends* the punishment beyond that otherwise imposable by law for the offense—in this case, from 15 years to 30 years for robbery second degree and kidnapping [each a Class B felony]. Another distinction marks the present *persistent offender* procedure from the former habitual criminal procedure. The statute does not impose a peremptory duty on the judge to extend sentence even after a determination of *persistent offender*.[4] Thus, the court may conform to the jury assessment of punishment as more efficacious than enhancement. The habitual criminal procedure simply took the function of punishment assessment from the jury altogether, even as a tentative advisement.

▪ The persistent offender was pleaded by Count I and Count III of the indictment by specific allegations that:

(1) On or about October 1, 1971, defendant, RAY A. THOMPSON a/k/a Ray Anthony Thompson, was convicted of the felony of Robbery in the First Degree in Division One of the Circuit Court of Jackson County, Missouri, C–40365, and

(2) On or about July 29, 1975, the defendant, RAY A. THOMPSON a/k/a Ray Anthony Thompson, was convicted of the felony of Robbery in Division Four of the District Court of Wyandotte County, Kansas, No. 21112Cr.

The previous convictions were the basis for extended punishment as a persistent offender. They were proved by evidence on that separate issue after the jury verdict. The defendant does not dispute the validity of that proof as the basis for an extended

---

3. Section 558.016.2

A "persistent offender" is one who has been previously convicted of two felonies committed at different times and not related to the instant crime as a single criminal episode.

4. Section 558.016.1.

The court *may* sentence a person . . . to an extended term of imprisonment if it finds the defendant is a persistent offender. [emphasis added]

term, *if specifically found* to that effect. The court found: "that the defendant is one who has been previously convicted of two felonies at different times, and not related to the instant crime." That does not suffice. The statute contemplates that the convictions be found according to indictment, that the proof shall conform with the charge, and that the findings describe the offenses which constitute the proof.

We conclude that the extended term for *persistent offender* was imposed without the determination of the *existence of the basis* for that enhancement of punishment prerequisite to that exercise of judicial authority. § 558.021.1(3). The extended terms on Count I and Count III rest validly, otherwise, on the determination that the defendant was a dangerous offender. Those judgments will not be disturbed, other than for reimposition of sentence for the other reasons given.

■ The final point contends that the conviction for the Count I robbery second degree [in this case, committed by deadly weapon] and the conviction for the Count II armed criminal action violates constitutional principle. It has been decided authoritatively that convictions for both armed criminal action and the underlying felony infringes the prohibition against double jeopardy. *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980).

The conviction for armed criminal action under Count II is reversed and the defendant is discharged from that judgment. The convictions for robbery second degree under Count I and for kidnapping under Count III are affirmed, but the sentences are set aside, and the causes are remanded to the trial court for reimposition of sentences.

All concur.