**STATE of Missouri, Respondent,**

v.

**Calvin CULLEN a/k/a Jackie Moore, Appellant.**

**No. WD 32046.**

Missouri Court of Appeals, Western District.

Dec. 14, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 8, 1983.

Application to Transfer Denied March 29, 1983.

---

852

James D. Walker, Asst. Public Defender (argued), James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen. (argued en banc), Kansas City, John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Brian P. Seltzer, Asst. Atty. Gen. (first argument), Jefferson City, for respondent.

Before SOMERVILLE, C.J., and SHANGLER, DIXON, WASSERSTROM, MANFORD, KENNEDY and NUGENT, JJ.

NUGENT, Judge.

Calvin Cullen (defendant) appeals from a jury verdict of June 3, 1980, finding him guilty of robbery, second degree, in violation of § 569.030 [1] and sentencing him to five years imprisonment, and from the enhancement of the sentence for an additional four years under § 558.016. We affirm the conviction but remand the case with directions to reopen the sentencing proceeding.

On November 11, 1979, shortly after 10:00 p.m. Gary Dean Bowman was driving north on Troost Avenue at Thirty-third Street in Kansas City, Missouri, when a person dressed as a female called for him to stop. Bowman stopped in a grocery store parking lot to speak with this person. When Bowman declined the offer of a date, the person, later identified as Cullen, a man, demanded all of Bowman's money, indicating that he had a .357 Magnum in his purse. After giving the person $24, Bowman drove away and reported the incident to the police, giving a description of the suspect. Three nights later Bowman, again driving on Troost Avenue, noticed Cullen standing in the same block in which the robbery had occurred. Bowman notified the police and identified Cullen in a lineup that same night.

The defendant was arraigned on this robbery charge on December 4, 1979. By the

calendar, the one hundred eightieth day thereafter was Sunday, June 1, 1980. In the interim, on its own motion for the reason that a state witness was unavailable, the court continued the trial setting from May 14 to June 2. Trial was called on Monday, June 2. That morning was devoted to hearings on Cullen's pretrial motions, including his motion to dismiss for failure to bring defendant to trial within the 180-day period set by the state speedy trial statute, § 545.780. The motions were overruled. Examination of the venire for jury selection began on the afternoon of June 2 and consumed the rest of the day. The following morning, defendant renewed his speedy trial motion to dismiss, it was denied, and the jury was sworn.

The jury found defendant guilty and assessed a punishment of five years. Thereafter, the trial court heard evidence on the issue of sentence enhancement under § 558.016 to determine whether defendant was a persistent offender. The prosecution offered evidence of a 1972 felony conviction for burglary consisting of two exhibits: Exhibit 2, a certified copy of the judgment and sentence of Cullen entered on January 4, 1973, showing that defendant was convicted in Jackson County of burglary, second degree; and Exhibit 1, a certified copy of a commitment order, fingerprints and photograph from the Department of Corrections showing that Cullen was received on March 10, 1974, and that his sentence was commuted on July 15, 1975.

For proof of a second prior felony conviction the state asked the court to take judicial notice of "State v. Cullen, aka Jackie Moore, CR 79–1043, in which Mr. Cullen was convicted of possession of a controlled substance, a Class C felony, on October 1, 1979, where Mr. Cullen received a sentence of two years in the Missouri Department of Corrections, which sentence is still pending execution." No record was offered into evidence relating to this conviction nor does the circuit court's file contain any documen-

---

1. All sectional references are to Revised Statutes of Missouri, 1978.

tation. In response to the prosecutor's request that the court take judicial notice of the 1979 conviction, the court stated:

Let the record further show that on the basis of the documents just received in evidence, the Court does determine that there is evidence in existence constituting a basis for an extended term, and makes findings with regard to those matters that are consistent with Exhibits 1 and 2, that is, the conviction of the prior felony is indicated by the State's offer of Exhibit 2 and the accompanying documents.

On this appeal the defendant raises two points: (1) the trial did not commence within the 180-day period in accordance with the provisions of § 545.780, Missouri's speedy trial statute; and (2) the trial court improperly imposed an extended four-year sentence because the prosecution failed to establish by adequate evidence two prior felony convictions.

### 1. *Speedy Trial*

■ With respect to the speedy trial issue, the burden rests with defendant to prove the expiration of the 180-day period. Once done, the burden shifts to the state to show the excludability of any period of delay. *State v. Richmond,* 611 S.W.2d 351, 357 (Mo.App.1980).

Supreme Court Rule 20.01(a) provides that in computing a period of time prescribed by a statute, "The last day of the period ... is to be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday." In this case, under this rule, the one hundred eightieth day after Cullen's December 4 arraignment was June 2, 1980. That Monday morning, although it was the day trial was set and

called, was spent on defendant's motions. Section 545.780–3(1)(c) provides that delay of a trial resulting from hearings on pretrial motions "shall be excluded in computing the time within which the ... trial ... must commence." If nothing else had happened in the case that day, the day nevertheless was excludable under § 545.780–3(1)(c), and a trial beginning on the following day, Tuesday, June 3, was timely commenced.[2]

The trial court need not have relied upon the application of the exclusion provided for in § 545.780–3(1)(c), however. The trial actually began on Monday, June 2, in the afternoon with the swearing of the venire at the commencement of the voir dire examination. That is so because, in the case of a jury trial, the selection of a jury is a necessary incident of the trial. Moreover, the swearing of the venire always occurs at a time when the judge has taken the bench, the defendant is present with counsel, and the court reporter is present. Thus the trial actually began on the one hundred eightieth day within the mandate of § 545.-780.

Defendant's reliance on *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), for the proposition that a trial does not begin until the jury is sworn is misplaced. That case presented "a single straightforward issue concerning the point during a jury trial when a defendant is deemed to have been put in jeopardy ..." for purposes of application of the Double Jeopardy Clause of the Fifth Amendment. *Id.* at 32, 98 S.Ct. at 2159. The Court and the defendant in *Crist* were concerned to fix a specific, definable time at which a defendant can always know that his jeopardy has begun for Fifth Amendment pur-

---

**2.** The court had earlier on its own motion granted a continuance from May 14 to June 2 because one of the state's witnesses was unavailable. Cullen contends that such delay may not be excluded from computation of the 180-day period because the record does not show that the court set forth its reasons for finding that the ends of justice served by the granting

of such continuance outweighed the best interests of the public and the defendant in a speedy trial as required by § 545.780–3(5)(a). The state argues that subsection 3(5)(a) is not applicable to an exclusion due to unavailability of a witness as provided by § 545.780–3(2). In view of our decision here, we need not decide that issue.

poses. The question is of constitutional dimensions. On the other hand, no question of constitutional import is involved in fixing and defining the certain end of a statutory period. Under the speedy trial statute, a defendant's concern is to know when a trial begins so that he and the court may know with certainty whether the trial has commenced within the 180-day period. No necessary correlation exists between the beginning of jeopardy and the end of the statutory period. We know of no constitutional or statutory compulsion that they be the same or coterminous. Moreover, trial judges and lawyers commonly understand the beginning of trial to be that time when the selection of the jury begins. The voir dire is the first regular and usual in-court proceeding on the morning a case is set for trial.[3]

 The statute gives the prosecution and the trial court clear and unequivocal direction to begin trial within a certain time, specifically instructing as to the measurement of that time. One cannot predict with certainty that voir dire will be completed within any given number of hours or days. If for speedy trial purposes trial did not begin until completion of the voir dire, a prolonged examination of the venire might well carry the proceeding beyond the statutory limits despite procedurally scrupulous efforts to afford a defendant his full statutory rights, thus permitting dismissal. Common sense tells us that the legislature intended no such absurd result. We hold, therefore, that for purposes of this statute the voir dire of the venire must be considered the beginning of the trial. Because here the voir dire began on June 2, the trial was timely commenced within the mandate of § 545.780. The trial court did not abuse its discretion in denying defendant's motion to dismiss.

## 2. Sentencing

Cullen also contends that the trial court erred in sentencing him to an extended

term of four years in addition to the five years imposed by the jury. The trial court was empowered to enhance defendant's sentence under § 558.016 if it found him to be a "persistent offender." The term is defined as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Section 558.016–3.

He argues that the trial court had no jurisdiction to impose such an extended term because: (1) the state did not prove that the prior offenses occurred on different dates; (2) a variance between the date of the conviction judicially noticed by the court and the one alleged in the state's information was fatal to enhancement; (3) the trial court did not take proper judicial notice of the 1979 conviction; and (4) the trial court did not make specific findings as to the basis of the extended term as required by § 558.021–1(3).

 In the first of these points, Cullen asserts that he was not properly sentenced as a persistent offender because the state did not prove that the two felonies were committed at different times as required by the statute. The state's evidence showed that defendant was found guilty by a jury of second degree burglary on September 19, 1972, sentenced on January 4, 1973, and that he was received by the Missouri Department of Corrections on March 10, 1974. According to the state a second felony conviction occurred on October 1, 1979. Where as here the inference is clear that the crimes were committed at different times, the state should not be required to negate every possibility without some assertion or evidence from the defendant that the crimes were committed at the same time. *State v. Leake,* 608 S.W.2d 564, 565–66 (Mo. App.1980). Defendant made no such assertion and offered no such evidence.

 In his second point, Cullen complains of the variance between the date given on

---

**3.** Clearly, the voir dire may not reasonably be viewed as excludable under § 545.780–3(1) ("Any period of delay resulting from other criminal proceedings concerning the defend-ant...."). We trust that no one would suggest that a voir dire is an "other criminal proceeding" in this context.

the amended information for his 1979 conviction and the date stated in the state's request for judicial notice of this conviction. The former date was said to be "on or about October 5, 1979"; at trial the prosecutor described the conviction as occurring on October 1, 1979. Where as here a date discrepancy in a persistent offender matter does not prejudice the defendant, the variance is not fatal to sentence enhancement. *State v. Quick,* 639 S.W.2d 880 at 883 (Mo. App.1982).

In his third and major point, Cullen asserts that the trial court erred because it did not expressly acknowledge judicial notice of the 1979 conviction and therefore, an extended term cannot be imposed.

When the prosecutor requested the court to take judicial notice of the 1979 conviction, the court's response was that the record should "show that on the basis of the documents just received in evidence, the Court does determine that there is evidence in existence constituting a basis for an extended term . . . ." The only documents previously explicitly mentioned or received in evidence were those pertaining to the 1973 conviction and sentence. The reply was ambiguous in that the record does not make clear whether the court had before it some unidentified documentary evidence of the 1979 conviction or meant simply to rely on the 1973 conviction proved in Exhibits 1 and 2.

■ Because of that ambiguity, the record is not sufficient to establish judicial notice of the 1979 conviction. When the showing of the existence of a court record is essential to enable a party to bear his burden of proof upon some matter at issue, then the record itself must be introduced in evidence, judicial notice only serving to dispense with the necessity of identifying the record. *State v. Pennick,* 364 S.W.2d 556, 559 (Mo.1963); *Richards Brick Co. v. Wright,* 231 Mo.App. 946, 82 S.W.2d 274, 279 (1935). Further, if a trial court takes judicial notice of its records in another case, it should cause the record to disclose the precise matters it has so considered.[4] In this case that was not done.

That being so, we must determine whether we may remand this case to the trial court for a re-opening of the sentencing proceeding for the taking of new or additional evidence or whether such a remand is barred by the Double Jeopardy Clause of the Fifth Amendment.[5] The Supreme Court has held in *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978), that the Double Jeopardy Clause precludes retrial of a defendant whose criminal conviction has been reversed for insufficiency of the evidence, the "only 'just' remedy . . . [being] the direction of a judgment of acquittal."[6] The justification for this preclusion was enunciated in *Green v. United States,* 355 U.S. 184, 187–88, 78

4. The Missouri Supreme Court has specifically held that in a sentence-enhancement proceeding, a trial court may judicially notice its own records in the process of determining the existence of the predicate convictions, even though the records are of other of defendant's cases. *State v. Surgeon,* 456 S.W.2d 293, 295 (Mo. 1970).

5. The Missouri Supreme Court dealt with the question in *State v. Johnson,* 485 S.W.2d 106, 111–12 (Mo.1972), and held that on retrial, the jury may make findings as to the defendant's prior convictions (relevant to a habitual criminal charge) even though the jury at the first trial made no finding on that charge. Such a second opportunity was held not to violate a defendant's constitutional rights. That decision does not fully answer the question before us, however, in light of post-*Johnson* United

States Supreme Court decisions. Missouri has not squarely addressed the issue post-*Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), discussed *infra.*

6. This principle has been reiterated in *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), and most recently, in *Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The *Burks* rule has been followed in two en banc decisions of the Missouri Supreme Court: *State v. Wood,* 596 S.W.2d 394, 397–98 (Mo.) (en banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), and *State v. Basham,* 568 S.W.2d 518, 521 (Mo.1978) (en banc).

S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), which held that

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as *enhancing the possibility that even though innocent he may be found guilty.*

In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), this principle was applied to a sentencing proceeding held to determine whether a defendant convicted of a capital murder should be sentenced to death or life imprisonment. The Court specifically noted the distinction between that case, and earlier cases which had held that the Double Jeopardy Clause imposes no prohibition against the imposition of a harsher sentence after retrial. First, the jury in *Bullington* did not have unbounded discretion, but was given two alternative sentences and standards for making the choice. Second, the prosecution had the burden of establishing certain facts beyond a reasonable doubt, giving the presentence evidentiary hearing the hallmarks of a trial on the issue of punishment. The Court held that the jury having once rejected the state's claim that the defendant deserved to die, the state was not entitled to a second chance at the death penalty,[7] and, at 446, 101 S.Ct. at 1862, that "[b]ecause the sentencing proceeding . . .

was like a trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a verdict is also available to [the defendant], with respect to the death penalty, at his retrial." The reasoning behind this holding was stated 451 U.S. at 445–46, 101 S.Ct. at 1861:

> The "embarrassment, expense and ordeal" and the "anxiety and insecurity" faced by a defendant at the penalty phase of a Missouri capital murder trial surely are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial. The "unacceptably high risk that the [prosecution], with its superior resources, would wear down a defendant," [*United States v. DiFrancesco*, 449 U.S. 117, 130, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980)] thereby leading to an *erroneously imposed death sentence,* would exist if the State were to have a further opportunity to convince a jury to impose the ultimate punishment. Missouri's use of the reasonable-doubt standard indicates that in a capital sentencing proceeding, it is the State, not the defendant, that should bear "almost the entire risk of error." *Addington v. Texas,* 441 U.S. [418] at 424 [99 S.Ct. 1804, 1808, 60 L.Ed.2d 323]. . . . Having received "one fair opportunity to offer whatever proof it could assemble," *Burks v. United States,* 437 U.S., at 16, 98 S.Ct. at 2150, the State is not entitled to another.

▇ In spite of this recent application of the Double Jeopardy Clause to sentencing proceedings, we hold that in the case before us defendant's Fifth Amendment rights are not endangered by remand for a reopening

---

7. The Court has emphasized again and again the repugnance to the Double Jeopardy Clause of subjecting a defendant to "second cracks" by the state. Sentence enhancement itself does not offend, *Moore v. Missouri,* 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895), *aff'g State v. Moore,* 121 Mo. 514, 26 S.W. 345, 346 (1894), nor does sentence review, *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). But double punishment is repugnant, *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and "second cracks" at the defendant are repugnant, *Hudson v. Louisiana, supra; United States v. DiFrancesco, supra; Swisher v. Brady,* 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978); *Burks v. United States, supra;* and *Green v. United States, supra.*

of the sentencing proceeding, for the following reasons.

First, although Missouri's sentence enhancement proceeding under § 558.021 has many of the characteristics of a trial that the sentencing proceedings in *Bullington* had,[8] and the fact-finder (the judge here, rather than the jury as in *Bullington*) is given specific standards in § 558.016 for determining whether a defendant is a prior, persistent or dangerous offender, we question whether the hearing here rose to a constitutional level of "embarrassment, expense and ordeal". The proceeding took place as part of the hearing on defendant's motion for new trial and consisted entirely of the admission of two exhibits showing defendant's 1973 conviction for burglary in the second degree and the state's request that the court take judicial notice of a 1979 conviction for possession of a controlled substance. No witnesses were called, and the entire proceeding apparently was concluded in a matter of minutes. The record fails to reflect anything remotely resembling an ordeal or the merest hint of expense. Any embarrassment of defendant could hardly have significantly increased that inherent in the nature of the sentencing proceeding itself.

Second and far more important to our decision is the specific distinction drawn in both *Bullington* and *Burks* between reversal for trial error and reversal for insufficiency of the evidence. When the court has erred, the reversal

> does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. . . .
>
> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble.

*Burks v. United States, supra,* 437 U.S. at 15–16, 98 S.Ct. at 2149–50.

This distinction was applied by the Missouri Supreme Court in *State v. Wood,* 596 S.W.2d 394 (Mo.) (en banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980), in which *Burks* was cited at 398 as clearly showing that "if a conviction is reversed solely due to trial error, then retrial is constitutionally permissible." Further, the court held that when the trial court erroneously admits evidence, retrial is permissible even when the state's case minus that evidence is insufficient, because the state is entitled to rely on the court's rulings and proceed accordingly.[9] The court said at 398–99:

> If the evidence offered by the State is received after challenge and is legally sufficient to establish the guilt of the accused, the State is not obligated to go further and adduce additional evidence that would be, for example, cumulative. Were it otherwise, the State, to be secure, would have to assume every ruling by the trial court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence. . . . This is consistent with *Burks v. United States, supra,* which lists among examples of trial error which do not invoke the Double Jeopardy Clause with regard to retrial, the "incorrect receipt or rejection of evidence."
>
> . . . .
>
> In short, neither *Burks v. United States, supra,* nor *Greene v. Massey, su-*

---

**8.** The hearing specified in § 558.021 provides the opportunity for admission of new and potentially damaging evidence against defendant; proof of prior convictions must be beyond a reasonable doubt and the burden of proof is on the prosecution; the defendant is entitled to counsel, full rights of confrontation and cross-examination, the right to present evidence and the right to specific findings; and the court must consider the credibility of witnesses and the weight of the evidence.

**9.** This principle has been followed in *State v. Biddle,* 599 S.W.2d 182 (Mo.1980) (en banc), and *City of Lee's Summit v. Lawson,* 612 S.W.2d 65 (Mo.App.1981).

*pra,* proscribes retrial of an accused following reversal of prior conviction predicated upon an incorrect ruling by the trial court as to the admission of evidence even where the discounting of the improperly received evidence resulted in evidentiary insufficiency.

Here, the trial court failed to make clear what it was judicially noticing as proof of defendant's 1979 conviction, but it nevertheless ruled that the evidence constituted a basis for an extended term. Several facts lead us to believe that some evidence of the 1979 conviction was actually before the court. First, even on this appeal the defendant does not assert that the court could not have judicially noticed the 1979 judgment, but contends only that the court did not *expressly* notice it. Second, at the sentence enhancement proceeding, defendant made no objection at all to the trial court's noticing of the *second* conviction. Third, the defendant has never denied such a 1979 conviction. On the contrary, on appeal he has furnished this court with a copy of the October 1, 1979, judgment and sentence. Fourth, the record reveals that at the time of sentencing defendant was on probation. Fifth, the court had before it a presentence investigation report, which we must assume revealed the 1979 judgment and sentence and, for all we know, included the defendant's admission of that conviction. (Also, the trial court may have been fully aware of some other admission of the conviction not in the record on appeal.)

We find that on these facts the failure of the trial court to make clear what it was judicially noticing was trial error, going to the question of "incorrect receipt of evidence" rather than insufficiency of the evidence.[10] Further, we find that the prosecutor was justified in relying on the court's ruling that a basis for the sentence enhancement had been established. He should not have been expected to offer more evidence of defendant's prior convictions, anticipating that the judicial notice may later prove defective and without it, the evidence would be insufficient. Having so decided, we hold that following the dictates of *Burks, Bullington,* and *Wood,* a remand of this case to enable the trial court to remedy its defective "receipt of the evidence" is not prohibited by the Double Jeopardy Clause. Further, we hold that the language in *Wood* stating that a retrial necessitated by trial error is permissible because of the impracticability of forcing the state to offer every bit of available

---

**10.** Missouri has not yet dealt with the question, post-*Bullington,* of the permissibility of remand for insufficiency of the evidence in a sentence enhancement proceeding. Our holding that trial error is at issue makes a determination of that question unnecessary here. We note, however, that those jurisdictions which have considered the question post-*Bullington* now require that the sentence be vacated and remanded for resentencing without enhancement. *See Bullard v. Estelle,* 665 F.2d 1347 (5th Cir.), cert. granted, —— U.S. ——, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982) (holding that the Double Jeopardy Clause bars a second enhancement proceeding when the evidence is insufficient to establish that the defendant committed one or more of the prior crimes). *Accord: People v. Quintana,* 634 P.2d 413 (Colo.1981) (en banc); *Cooper v. State,* 631 S.W.2d 508 (Tex.Cr.App. 1982) (en banc). In addition, other jurisdictions have drawn the trial error/insufficiency of the evidence distinction in resentencing proceedings. *See State v. Pina,* 440 A.2d 962, 965–66 (Conn.1981) (holding that where the sentence imposed did not make the statutorily required indication of whether the terms shall run concurrently or consecutively, the sentence may be corrected without imposing double jeopardy); *Godfrey v. State,* 248 Ga. 616, 284 S.E.2d 422, 425–26 (1981) (holding that where the Supreme Court had reversed defendant's death penalty sentence on the grounds it was a standardless and unchanneled imposition, the Double Jeopardy Clause does not preclude reimposition of death penalty on remand because the reversal was for trial error, not insufficiency of the evidence); and *People v. Maldonado,* 82 A.D.2d 576, 442 N.Y.S.2d 567 (N.Y. App.Div.1981) (distinguishing *Bullington* on the grounds it was a capital case in which a trial was held on the issue of punishment, and on the grounds that the present case involved trial error rather than insufficiency of the evidence). *See also Fitzpatrick v. State,* 638 P.2d 1002 (Mont.1981) (holding that because Montana's sentencing proceeding does not resemble a trial, *Bullington* does not preclude an imposition of the death penalty on retrial, even though the judge in the first trial refused to impose that penalty).

relevant evidence after an already favorable ruling, must contemplate that any unused available and otherwise admissible additional evidence may be admitted at the second trial. Otherwise, the state would be punished for its reliance on the trial court's rulings. In this case, therefore, the trial court may on remand remedy its defective receipt either by clarifying what was judicially noticed or by admitting a certified copy of the 1979 judgment and sentence.[11]

Finally, for his last point on the issue of sentence enhancement, defendant asserts that the trial court erred because it did not make specific findings as to the basis for an extended term, as required by § 558.016. Because we are remanding this case for a re-opening of the sentencing proceeding, the trial court is directed to remedy its findings to clearly show the basis for the sentence enhancement.[12] Remand on the issue of specific findings finds precedent in *State v. Thompson*, 629 S.W.2d 361 (Mo.App.1981), *aff'd*, 629 S.W.2d 369 (Mo. 1982) (en banc).

For the foregoing reasons, the conviction for robbery second degree is affirmed, but the cause is remanded to the trial court with directions to reopen the sentencing proceeding and to proceed therein in a manner consistent with this opinion.

All concur.

11. Remand to the trial court for reimposition of sentence in accordance with the provisions of § 558.021–1(3) is not in itself a violation of a defendant's double jeopardy rights and has been ordered by this court in several recent decisions. *See State v. Thompson*, 629 S.W.2d 361 (Mo.App.1981), *aff'd*, 629 S.W.2d 369 (Mo. 1982) (en banc) (remanded for reimposition because of a failure by the trial court to make specific findings); *State v. Lewis*, 633 S.W.2d 110 (Mo.App.1982) (stating that a court "may correct without constitutional consequence, a mistake of law" made in sentencing); *State v. Moore*, 633 S.W.2d 140 (Mo.App.1982); and *State v. Slater*, 633 S.W.2d 439 (Mo.App.1982) (both cases remanding for resentencing because the sentence was not validly derived).

12. We note that in addition to being somewhat mooted by our holding here, this point suffers from defendant's failure to object to the lack of findings at the trial. The question can only be reviewed, then, as plain error, requiring a showing by defendant that he has suffered a "manifest injustice or a miscarriage of justice." Rule 84.13. In *State v. Moland*, 626 S.W.2d 368 (Mo.1982), the court held that such injustice had not been shown where the evidence before the trial court supported the finding that defendant was convicted of two previous felonies. Here, defendant admits that he was actually convicted of two earlier felonies and in fact, has provided this court with a certified copy of his 1979 judgment and sentence, the only conviction at issue. Under these facts, we find no manifest injustice.